**No. 24-1177**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**POWERBLOCK HOLDINGS, INC.**

*Plaintiff-Appellant*

**v.**

**IFIT, INC.**

*Defendant-Appellee*

*Appeal from the United States District Court for the District of Utah in Case No. 1-22-CV-00132, Judge Jill N. Parrish*

# CORRECTED BRIEF FOR DEFENDANT–APPELLEE IFIT, INC.

MARK W. FORD
C.J. VEVERKA
**MASCHOFF BRENNAN**
1389 Center Drive, Ste. 300
Park City, Utah, 84098
Telephone: (435) 252-1360

L. REX SEARS
**MASCHOFF BRENNAN**
95 South State Street, Ste. 800
Salt Lake City, Utah, 84111
Telephone: (801) 297-1850

*Attorneys for Defendant-Appellee*

APRIL 15, 2024

# CLAIM LANGUAGE

## U.S. Patent No. 7,578,771 Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 20

**1.** A weight selection and adjustment system for a selectorized dumbbell, which comprises:

(a) a selectorized dumbbell, which comprises:

(i) a stack of nested left weight plates and a stack of nested right weight plates;

(ii) a handle having a left end and a right end; and

(iii) a movable selector having a plurality of different adjustment positions in which the selector may be disposed, wherein the selector is configured to couple selected numbers of left weight plates to the left end of the handle and selected numbers of right weight plates to the right end of the handle with the selected numbers of coupled weight plates differing depending upon the adjustment position in which the selector is disposed, thereby allowing a user to select for use a desired exercise weight to be provided by the selectorized dumbbell; and

(b) an electric motor that is operatively connected to the Selector at least whenever a weight adjustment operation takes place, wherein the electric motor when energized from a source of electric power physically moves the Selector into the adjustment position corresponding to the desired exercise weight that was selected for use by the user.

**2.** The system of claim 1, further comprising:

(a) an electrically operated data entry device to allow the user to input the desired exercise weight; and

(b) a controller operatively communicating with the data entry device and the electric motor for energizing the electric motor from the electric power source to cause the electric motor to move the selector to the adjustment position thereof that corresponds to the desired exercise weight input by the operator into the data entry device.

**3.** The system of claim 1, wherein the data entry device includes data entry keys or buttons that may be manipulated by the user for allowing the user to input the desired exercise weight into the data entry device.

**4.** The system of claim 3, wherein the data entry device further includes a visual display for displaying back to the user the desired exercise weight that has been input into the data entry device by the user by manipulation of the keys or buttons.

**5.** The system of claim 2, further comprising:
(a) a stand on which the selectorized dumbbell is supported during a weight adjustment operation;
(b) wherein the motor is mounted on the stand; and
(c) a driver releasably connected to the selector of the dumbbell when the dumbbell is on the stand with the driver being driven by the motor when the motor is energized.

**6.** The system of claim 5, wherein the data entry device is also mounted on the stand.

**7.** The system of claim 5, further comprising a sensor for detecting when the selectorized dumbbell is in a proper weight adjusting position on the stand, and wherein the sensor is operatively connected to the controller for inhibiting a weight adjustment operation unless the sensor reports to the controller that the selectorized dumbbell has been placed in the proper weight adjusting position on the stand.

**8.** The system of claim 5, further comprising a device configured to grip the selectorized dumbbell for retaining the selectorized dumbbell in the proper weight adjusting position on the stand during a weight adjustment operation.

**9.** The system of claim 8, wherein the gripping device comprises a plurality of fingers movably supported on the stand for movement between a first position in which the fingers are clear of the selectorized dumbbell and a second

position in which the fingers overlie portions of the selectorized dumbbell to hold the selectorized dumbbell in place on the stand.

**10.** The system of claim 9, wherein the stand comprises an upper support surface on which the selectorized dumbbell is supported when the selectorized dumbbell is in the proper weight adjusting position, and wherein the fingers are pivotal relative to the upper support surface such that the fingers can be swung from the first position in which upper ends of the fingers are swung laterally outwardly of opposed sides of the selectorized dumbbell to the second position in which the upper ends of the fingers are swung laterally inwardly to overlie opposed sides of the selectorized dumbbell.

**11.** The system of claim 10, wherein the fingers project through slots in the upper support surface with the upper ends of the fingers being continuously located above the support surface as the fingers pivot between the first and second positions thereof.

**12.** The system of claim 1, further including a plurality of selectorized dumbbells of the type recited in claim 1, and wherein a single electric motor is operatively connected to the selectors of the plurality of selectorized dumbbells at least whenever a weight adjustment operation takes place such that only one motor adjusts the selectors of both dumbbells substantially simultaneously.

**13.** The system of claim 12, further comprising:

(a) a stand on which the plurality of sectorized dumbbells are supported during a weight adjustment operation;

(b) wherein the motor is mounted on the stand with the motor having a rotatable motor drive shaft;

(c) a plurality of rotatable drivers corresponding in number to the plurality of reflectorized dumbbells on the stand with one driver being releasably connected to the selector of each dumbbell when each dumbbell is on the stand; and

(d) a belt and pulley system connecting the motor drive shaft to the drivers for rotating the drivers substantially simultaneously with rotation of the motor drive shaft.

**14**. The system of claim 13, wherein the stand comprises an upper support surface on which the electrized dumbbells are supported during a weight adjustment operation, and wherein the motor and belt and pulley system are mounted on the stand beneath the upper support surface with the rotatable drivers having access through holes in the upper support surface to the selectors of the selectorized dumbbells for coupling to the selectors.

**15.** The system of claim 1, further comprising:

(a) a stand on which the selectorized dumbbell is supported during a weight adjustment operation;

(b) wherein the motor is mounted on the stand; and

(c) a driver releasably connected to the selector of the dumbbell when the dumbbell is on the stand with the driver being driven by the motor when the motor is energized.

**16.** The system of claim 1, wherein the motor is mounted on the handle of the selectorized dumbbell and is always operatively coupled to the selector.

**17.** The system of claim 16, further comprising:

(a) an electrically operated data entry device to allow the user to input the desired exercise weight;

(b) a controller operatively communicating with the data entry device and the electric motor for energizing the electric motor from the electric power source to cause the electric motor to move the selector to the adjustment position thereof that corresponds to the desired exercise weight input by the operator into the data entry device; and

(c) wherein the data entry device and controller are also mounted on the handle of the selectorized dumbbell.

**18.** The system of claim 17, further comprising a battery mounted on the handle to serve as the electric power source.

**20.** A weight selection and adjustment system for a dumbbell, which comprises:

(a) a dumbbell that provides an exercise weight that is lifted by a user when the user grips and lifts a handle of the dumbbell, wherein the exercise weight provided by the dumbbell is adjustable by coupling more or fewer weight plates to each end of the handle;

(b) an electric motor that may be selectively energized and when energized will cause a desired number of weight plates to be coupled to each end of the handle; and

(c) a data entry device to allow the user to input a weight selection decision that operatively controls the energization of the motor to adjust the exercise weight of the dumbbell in accordance with the weight selection decision input into the data entry device by the user.

## CERTIFICATE OF INTEREST

Counsel for Appellee iFit, Inc. certify the following:

1. The full name of every party represented by me is:

   IFIT, Inc.

2. The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me:

   None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   iFit Health & Fitness Inc.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   None.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

   None.

6. All information required by Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6):

   None.

Dated: April 15, 2024

*/s/Mark W. Ford*

Mark W. Ford
MASCHOFF BRENNAN

# TABLE OF CONTENTS

I. STATEMENT OF RELATED CASES ........ 1

II. STATEMENT OF ISSUES ........ 1

III. STATEMENT OF THE CASE ........ 1

A. The Scope of the ’771 Patent ........ 2

1. Prior Art Selectorized Dumbbells ........ 3

2. Automating Selectorized Dumbbells ........ 5

B. Claim Elements of the ’771 Patent ........ 7

C. The District Court’s Decision and Order Granting In Part and Denying In Part Defendant’s Motion to Dismiss ........ 9

IV. SUMMARY OF ARGUMENT ........ 12

V. LEGAL BACKROUND ........ 14

VI. ARGUMENT ........ 16

A. Standard of Review ........ 16

B. The Claims at Issue Fail *Alice* Step 1 ........ 17

1. The Claims at Issue are Directed to the Abstract Idea of Automating Weight Adjustment on a Selectorized Dumbbell ........ 18

2. The Claims at Issue Do Not Recite a Specific Means or Method to Improve Selectorized Dumbbells ........ 22

3. The Claims at Issue Are Directed to a Result or Effect That Itself is the Abstract Idea ........ 23

4. The *EcoServices* Decision Illustrates the Claims at Issue are Directed to an Abstract Idea ........ 28

C. The Claims at Issue Fail *Alice* Step 2 ........ 31

1. The Claims at Issue Recite Conventional Components Performing as Expected ........ 32

D. The District Court Properly Accepted as True All Plausible and Specific Factual Allegations Under *Alice* Step 2 ........ 36

E. The District Court Properly Determined the Focus of the Claims at Issue l (Alleged Errors 1 and 2) ........ 40

F. The District Court did not Treat Claim 20 as Representative (Alleged Error 3) ........ 43

G. The District Court Properly Considered Purported Advantages Over the Prior Art (Alleged Error 4) ........ 45

VII. CONCLUSION ........ 47

# TABLE OF AUTHORITIES

## Cases

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) .......... 17

*Alice Corp. Pty. v. CLS Bank International*,
573 U.S. 208 (2014) .......... *passim*

*American Axle & Mfg. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020) .......... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 37

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) .......... 31, 39

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) .......... 15, 16, 18

*Chamberlain Group, Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) .......... 36

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) .......... *passim*

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .......... 15

*Ficep Corp. v. Peddinghaus Corp.*,
No. 2022-1590, 2023 WL 5346043 (Fed. Cir. Aug. 21, 2023) .......... 17

*IBM Corp. v. Zillow Group, Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) .......... 37

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) .......... 41

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) .......... 33

*Lambertsen v. Utah Dep't of Corr.*,
79 F.3d 1024 (10th Cir. 1996) .......... 37

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) .......... 14, 32

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) .......... 15, 33

*PowerBlock Holdings, Inc. v. iFit, Inc.*,
No. 1:22-cv-00134, 2023 WL 6377781 (D. Utah Sept. 29, 2023) .......... 10

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672, 199 L. Ed. 2d 535 (2018) .......... 16

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) .......... 36

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) .......... 37

*Straub v. Burlington N. Santa Fe Ry. Co.*,
909 F.3d 1280 (10th Cir. 2018) .......... 16

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) .......... 17

*In re TLI*,
823 F.3d 607 (Fed. Cir. 2016) .......... 34, 39, 40, 44

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
887 F.3d 1376 (Fed. Cir. 2018) .......... 15

*Yanbin Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) .......... 20, 41

**Statutes**

35 U.S.C. § 101 .......... *passim*

35 U.S.C. § 112 ........................................................................................ 11

## I. STATEMENT OF RELATED CASES

Counsel are not aware of any case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## II. STATEMENT OF ISSUES

Whether the district court correctly ruled that appellant PowerBlock Holdings, Inc. (PowerBlock) failed to state a claim on which relief could be granted because claims 1-18 and 20 (Claims at Issue) of U.S. Patent No. 7,578,771 ('771 patent) are directed to the abstract idea of automating weight adjustment on a selectorized dumbbell, and further do not claim an inventive concept that provides significantly more than the abstract idea itself, and therefore are ineligible for patenting under 35 U.S.C. § 101.

## III. STATEMENT OF THE CASE

PowerBlock's '771 patent is directed to the abstract idea of automating weight adjustment on a selectorized dumbbell. The '771 patent claims this abstract idea by adding conventional components, performing their expected function, to prior art dumbbells with manually adjustable weights (called "selectorized" dumbbells in the '771

patent and by PowerBlock generally). These components, principally a generic electric motor and data entry device, automate a process traditionally performed by human operators manually manipulating dials or knobs. In a clear and well-reasoned order, the district court correctly determined that the Claims at Issue were impermissibly abstract and lacked transformative elements imparting inventive concepts.

### A. The Scope of the ’771 Patent

The ’771 patent purports to provide an “integrated system for selecting and adjusting the weight of selectorized dumbbells.” Appx044 (1:17-19). This integration combines two well-known technologies: (1) dumbbells with manually adjustable weights and (2) computerized data entry devices that control electric motors (*e.g.*, a keypad on a soda machine). By merging these conventional technologies, the ’771 patent purports to accomplish the abstract concept that is its singular and overarching objective: satisfying “a need in the art to automate and ease the task of adjusting the weight of selectorized dumbbells.” Appx044 (2:8-10).

### 1. Prior Art Selectorized Dumbbells

The foundation of prior art selectorized dumbbell technology is individual dumbbells, or hand weights, ubiquitous in both home and commercial gyms (depicted below).




Appx130. Individual dumbbells include a set amount of weight secured to opposite ends of a handle. The amount of weight secured to a handle on the individual dumbbells is fixed, requiring a set of separately weighted dumbbells for workouts involving varying weight amounts.

The technology of selectorized dumbbells, individual dumbbells with an adjustable amount of weight, was developed in the mid-1990's. Appx131. The written description of the '771 patent acknowledges this prior art technology, which it describes in detail.

> In a selectorized dumbbell, a plurality of weights nest together. The weights provide a stack of nested left weight plates and a stack of nested right weight plates. The left and right stacks of weight plates are separated from one another by a gap.

> In a selectorized dumbbell, a handle is inserted into the gap between the left and right stacks of weight plates. A selector is then manipulated to determine how many of the left and right weight plates of the weights are coupled to the left and right ends of the handle. Once the selector is positioned to pick up a selected number of weights, the handle can then be lifted by the user from between the stacks of weight plates. The selected number of weights will rise with the handle to be used in performing various exercises with the dumbbell.

Appx044 (1:24-37). "A well-known selectorized dumbbell is shown in U.S. Pat. No. 5,769,762 [(now expired)], owned by [PowerBlock]."

Appx044 (1:41-43). Figure 1 from that patent generally depicts a pair of prior art selectorized dumbbells, supported on a tabletop (described by PowerBlock as a "stand" comprising "'specific means' that provide technical improvement over prior art selectorized dumbbells"). Appellant's Opening Brief (AOB) at 28.



Fig. 1

Appx131.

The main constituents of prior art selectorized dumbbells—nested weight plates, a handle, and a movable (adjustable) selector having a plurality of different positions allowing a user to select a desired exercise weight—are the foundational elements recited in every claim of the ’771 patent. Appx049-050 (independent claims 1(a)(i)-(iii), 19(a)(i)-(iii), 20(a)).

### 2. Automating Selectorized Dumbbells

The stated objective of the ’771 patent is itself an abstract idea—to satisfy a purported “need in the art to automate and ease the task of adjusting the weight of selectorized dumbbells.” Apps044 (2:8-10). This objective (automation) is accomplished by replacing the manually manipulated selector with (1) an electric motor and (2) a data entry device.

> The exercise weight provided by the dumbbell is adjustable by coupling more or fewer weight plates to each end of the handle. An *electric motor* is provided that may be selectively energized and when energized will cause a desired number of weight plates to be coupled to each end of the handle. A *data entry device* is provided to allow the user to input a weight selection decision that operatively controls the energization of the motor to adjust the exercise weight of the dumbbell in accordance with the weight selection decision input into the data entry device by the user.

Appx044 (2:55-64) (emphasis added). The electric motor of the ’771 patent is a generic motor that performs its conventional function:

> [T]he term “motor” or “motorized” is not to be limited to the specific type of motor [ ] shown herein . . . , but is meant to apply to any powered device that converts electrical energy into physical motion, e.g. a solenoid, a magnet, etc.

Appx049 (43-47). Similarly, the data entry device of the ’771 patent is a conventional “electronic device[ ] in which data entry is accomplished by the manipulation of an alpha-numeric keyboard or a numeric keypad or the like . . . found on a host of products . . . such as personal computers, cell phones, television remote controls, etc.” Appx044 (2:1-6) The data entry device disclosed and claimed in the ’771 patent is used for its conventional function—data entry. A variety of off-the-shelf devices are compatible: “[T]he type of data entry device [ ], the kinds of steps the user might have to take to input the weight selection decision he or she has made, the types of displays [ ] or menus that might be used on such displays, can obviously vary.” Appx047 (7:9-13)

The ’771 patent purports that some nominal benefits, both safety and ease-of-use, can result from automating weight adjustment on selectorized dumbbells. The written description provides that automated weight adjustment of the ’771 patent is “easy and simple to

operate" without the user having to "touch or manipulate" the selector knobs or dials. Appx049 (11:16, 19-21). And that "[b]oth dumbbells [ ] can be remotely . . . and simultaneously adjusted." Appx049 (11:19-20, 24-25). The specification also provides that the automated system of the '771 patent reduces human error by eliminating "external tether cords or the like" and holding the "selector in place" to avoid potential dislodgement of the manual selector. Appx49 (12:47-56). To the extent these benefits are realized, they are incidental to automating the selectorized dumbbell systems of the '771 patent by replacing the manual selector with a conventional electric motor and conventional data entry device.

### B. Claim Elements of the '771 Patent

The Claims at Issue recite the common elements of prior art selectorized dumbbells, conventional components for motorizing those systems, and the desired result of automating selectorized dumbbells. The claims do not recite specific means or methods that improve prior art selectorized dumbbells.

Representative claim 20[1] provides:

20. A weight selection and adjustment system for a dumbbell, which comprises:

> (a) a dumbbell that provides an exercise weight that is lifted by a user when the user grips and lifts a handle of the dumbbell, wherein the exercise weight provided by the dumbbell is adjustable by coupling more or fewer weight plates to each end of the handle;
>
> (b) an electric motor that may be selectively energized and when energized will cause a desired number of weight plates to be coupled to each end of the handle; and
>
> (c) a data entry device to allow the user to input a weight selection decision that operatively controls the energization of the motor to adjust the exercise weight of the dumbbell in accordance with the weight selection decision input into the data entry device by the user.

Appx050 (14:33-48). Representative claim 20 is directed to the abstract idea of *automating weight adjustment on a selectorized dumbbell*. As reflected in the specification of the ’771 patent, this abstraction is implemented using common components of prior art selectorized dumbbells and components that are generic and conventional. What’s

[1] Notwithstanding its objections to the district court’s use of claim 20 as representative (which it did not), claim 20 is used as representative here because PowerBlock centers its own arguments around the elements of claim 20. AOB at 14, 44, 47.

more, these components are conventionally arranged in a generic environment to perform their conventional functions: (1) common elements of a prior art selectorized dumbbell; (2) an electric motor causing weight plates to be added to each end of the handle in an unspecified way; and (3) a data entry device controlling the electric motor to adjust the number of weight plates corresponding to user input, again, in an unspecified way. Claim 20 (and, together, claims 1 and 2) does not specify *how* the electric motor and data entry device operate to adjust the weight on a selectorized dumbbell. The Claims at Issue are directed only to the aspirational concept of automating weight adjustment on a selectorized dumbbell system, and not a specific means or distinct process for achieving the desired result. This distinction is similar to the difference between an incomplete list of ingredients and a recipe.

### C. The District Court's Decision and Order Granting In Part and Denying In Part Defendant's Motion to Dismiss

On December 16, 2022, Appellee iFit, Inc. (iFit) filed its motion to dismiss PowerBlock's complaint under Rule 12(b)(6), seeking dismissal of PowerBlock's claim for patent infringement and a related claim

under the Utah Unfair Competition Act, because the claims of the '771 patent are (1) directed to the patent ineligible abstract idea of automating weight adjustment on a selectorized, and (2) do not claim an inventive concept sufficient to transform the abstract idea into a patent-eligible invention under 35 U.S.C. § 101.

Following oral argument, the district court issued its Memorandum Decision and Order Granting In Part and Denying In Part iFit's Motion to Dismiss (Order). *PowerBlock Holdings, Inc. v. iFit, Inc.*, No. 1:22-cv-00134, 2023 WL 6377781 (D. Utah Sept. 29, 2023), (Appx001-20). The Order determined that "the language of claims 1-18 and claim 20, read in light of the patent as a whole, is defined by the general outcome or effect of automated selectorized dumbbell weight stacking . . . ."[2] Order at *5, Appx014. The district court further concluded that

> [the Claims at Issue recite] at a high level . . . 'generic, conventional elements' of dumbbells, motors, and data entry devices, merely automating conventional selectorized

[2] At the proceedings below, iFit and the district court have used different *words* to describe the same abstract idea: Automating weight adjustment on a selectorized dumbbell. (District court: "[A]utomated selectorized dumbbell weight stacking . . . ." (*Id.*); iFit: "[P]erforming an electronic weight adjustment action on a selectorized dumbbell." (Appx129))

> dumbbell functions and process. The generic motor-automated machine is not meaningfully different than the conventional one, and the court thus fails to find an inventive concept as to these claims. Each component at issue in those claims, used in a conventional and generic way, is merely a 'conduit for the abstract idea' of the *result* of an automated selectorized dumbbell.

Order at *7, Appx018 (internal citations omitted) (emphasis in original).

The district court also determined that "because claim 19, and the effects of the operation of 35 U.S.C. § 112 ¶ 6 in the *Alice* inquiry as to that claim, are not sufficiently argued, the court concludes that dismissal as to that claim would be inappropriate." Order at *7, Appx019. To the extent the district court's order denied iFit's motion as to claim 19 and PowerBlock's second claim under the Utah Unfair Competition Act, the order did so without prejudice and invited iFit to renew its motion if it elected to do so. *Id.*

The parties then stipulated to dismissal of the remaining claims (infringement of claim 19 of the '771 patent and PowerBlock's related claim under the Utah Unfair Competition Act) to provide PowerBlock jurisdiction to pursue this appeal. Appx282.

## IV. SUMMARY OF ARGUMENT

This case closely tracks well established precedent invalidating result-oriented, functional claims as directed to patent-ineligible subject matter.

*Alice* Step 1. The Claims at Issue are directed to automating weight adjustment on a selectorized dumbbell—an action traditionally performed manually by a human exerciser moving a knob or dial. The physical elements are defined in terms of their functions. Each of the claims follow this path: reciting the desired functional result of automating weight adjustment on selectorized dumbbells with generic components put to conventional use, *e.g.*, a data entry device to input a selected weight and an electric motor to effectuate the weight adjustment. But the claims do not recite a new system or method specifying *how* to achieve that result, such as new coupling of the electric motor to the weights or a specific algorithm translating data from the data entry device to the motor. The claims, as a whole, are directed to the abstract idea of automating weight adjustment on a selectorized dumbbell.

*Alice* Step 2. The Claims at Issue lack an inventive concept. To the extent the claims recite any additional elements, those elements are not transformative but instead comprise generic conventional components, conventionally arranged to accomplish their conventional functions and leading, ultimately, back to the abstract idea. Here, the combination of elements alleged to contribute inventive concepts—electric motors and data entry devices added to prior art selectorized dumbbells—are described by the specification as generic components functioning in automated systems and processes. PowerBlock's contention that the Claims at Issue are directed to novel selectorized dumbbells is contradicted by the claims and specification themselves, which require no transformative result but, instead, recite only the conventional functions of the added elements.

The districts court's analysis of *Alice* Step 2 refutes PowerBlock's additional arguments that the court's conclusion that added elements are "'generic,' 'routine,' and 'used conventionally'" were "factual findings lack[ing] any support in the pleadings' and based on "unsupported attorney argument." The district court properly focused on the claims themselves, in light of the written description. The record before the

district court—PowerBlock's complaint, the '771 patent, and other attachments—is replete with factual statements establishing conventionality of the added elements as applied to automated systems. The district court correctly found that, even accepting as true any well-pleaded allegations, the Claims at Issue are directed to an abstract idea and lack an inventive concept providing significantly more than the abstract idea. The district court's order finding the Claims at Issue are ineligible under § 101 should be affirmed.

## V. LEGAL BACKROUND

Determinations of patent-eligible subject matter under 35 U.S.C. § 101 follow the now-familiar two-step test articulated by the Supreme Court in *Alice Corp. Pty. v. CLS Bank International,* 573 U.S. 208, 218 (2014). The inquiry distinguishes patent-eligible inventions from mental processes and abstract intellectual concepts that are not eligible for patent protection. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

At Step 1, courts must "first determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 573 U.S. at 217-19. That is, the Court must determine

whether the claims' "focus"—their "character as a whole"—is an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *see also CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020) ("[W]e consider the claims in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." (internal citations and quotations omitted)). An abstract idea need not be a "preexisting, fundamental *truth*"—instead, it can be a "longstanding . . . practice." *Alice*, 573 U.S. at 220 (emphasis added). Thus, fundamental activities that "[h]umans have performed" are abstract ideas under *Alice* Step 1. *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018).

At Step 2, courts must determine whether the other claim elements, individually or collectively, add "significantly more" to the abstract idea that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221-22. Implementing an abstract idea with "well-understood," "routine," or "conventional" activities, or in a particular technological environment, does not suffice. *Id.* at 225; *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) ("conventional computer

activities or routine data-gathering steps" are insufficient). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672, 199 L. Ed. 2d 535 (2018).

## VI. ARGUMENT

Because this Court reviews § 101 determinations *de novo*, iFit first addresses why the Claims at Issues are directed to patent-ineligible subject matter and invalid under § 101. iFit then addresses PowerBlock's allegation that the district court committed "four errors" in reaching the same conclusion.

### A. Standard of Review

This Court reviews a dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim according to the law of the regional circuit, which in this case is the Tenth Circuit. *CardioNet,* 955 F.3d at 1367 (citation omitted). The Tenth Circuit reviews *de novo* a district court's decision to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Straub v. Burlington N. Santa Fe Ry. Co.,* 909 F.3d 1280, 1287 (10th Cir. 2018) (citation omitted).

### B. The Claims at Issue Fail *Alice* Step 1

At Step 1, courts "look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1257 (Fed. Cir. 2016) (internal citation omitted). "In conducting that inquiry, [courts] must focus on the language of the [a]sserted [c]laims themselves, considered in light of the specification." *TecSec, Inc. v. Adobe Inc.,* 978 F.3d 1278, 1292 (Fed. Cir. 2020) (cleaned up). But "[u]ltimately, the § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (internal citations omitted). An abstract idea need not be a "preexisting, fundamental truth"—instead, merely a "longstanding . . . practice" can suffice. *Alice*, 573 U.S. at 220. Thus, "[a]utomating a previously manual process is not sufficient for patent eligibility." *Ficep Corp. v. Peddinghaus Corp.,* No. 2022-1590, 2023 WL 5346043, at *4 (Fed. Cir. Aug. 21, 2023).

### 1. The Claims at Issue are Directed to the Abstract Idea of Automating Weight Adjustment on a Selectorized Dumbbell

The parties and the district court agree that, in this case, the analysis under *Alice* Step 1 can be distilled to one question: "[W]hether the claims 'focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea.'" *CardioNet,* 955 F.3d at 1368 (citation omitted). AOB at 26; Order at *2, Appx003. The district court correctly determined it is the latter: The Claims at Issue are directed to the abstract idea of automating the process of adjusting the weight of an adjustable (selectorized) dumbbell, a practice human operators have accomplished manually, using dials and knobs, for many years. Order, at *5, Appx014. ("[T]he language of claims 1-18 and claim 20 . . . read in light of the patent as a whole, is defined by the general outcome or effect of *automated selectorized dumbbell weight stacking* . . . ." (emphasis added)). The Claims at Issue state the *result* of automating weight adjustment on a selectorized dumbbell without claiming *how* that result is achieved. As such, the claims fail *Alice* Step 1.

The parties and the district court also agree that three elements of claim 20 essentially frame the issue for *Alice* Step 1:

> (a) a "dumbbell that provides an exercise weight that . . . is adjustable by coupling more or fewer weight plates" to each end of the dumbbell's handle;
>
> (b) an "electric motor that may be selectively energized . . . [to] cause a desired number of weight plates to be coupled to each end of the handle"; and
>
> (c) a "data entry device" through which a user can "input a weight selection decision that operatively controls the energization of the motor[3] to adjust the exercise weight of the dumbbell . . . ."

Order at *4, Appx010; PowerBlock's Brief at the district court, Appx159; AOB at 14; Appx050 (14:33-47). But the claims do not recite specific underlying technologies or methodologies (*e.g.*, a specialized motor or improved mode of data entry) that achieve the desired result. Instead, the claimed invention is defined only in terms of its functions and the desired result of a system to "automate and ease the task of adjusting the weight of selectorized dumbbells" without specifying *how* the system

[3] The claim language of claim 20 (and claims 1-2) is written in such vague, indefinite, and functional terms, it is not clear if it is the "data entry device" or the "weight decision" that "operatively controls the energization of the motor." Either way, the claim is directed to an abstract idea.

actually improves the technology of selectorized dumbbells. Appx044, 2:8-10. The Claims at Issue are thus "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery" rather than "a specific means or method that improves the relevant technology." *Yanbin Yu v. Apple Inc.,* 1 F.4th 1040, 1043 (Fed. Cir. 2021) (citing *Smart Sys. Innovations, LLC v. Chi. Transit Authority,* 873 F.3d 1364, 1371 (Fed. Cir. 2017)).

Although the language of written description "must always yield to the claim language," the specification of the '771 patent confirms the same focus of the claims. The specification states a single objective of the '771 patent, expressed in terms of a need in the prior art of selectorized dumbbells: "There is a need in the art to *automate and ease* the task of adjusting the weight of selectorized dumbbells." Appx044 (2:8-10) (emphasis added).

That objective is followed by four "aspects" of the invention that consist of conventional components that perform conventional functions to accomplish the stated objective. Appx044, 045 (2:15-67, 3:1-9). Aspect one adds an "electric motor" that "physically moves the selector into the adjustment position corresponding to the desired exercise weight that

was selected for use by the user." Appx044, (2:14-33). The second aspect lists a "means selectively actuable by the user" allowing the user to adjust the weight of a selectorized dumbbell "without requiring the user to physically contact and move the selector." Appx044, (2:34-50). A third aspect of the invention adds a "data entry device" functioning with the electric motor of aspect one "to adjust the exercise weight of the dumbbell in accordance with the weight selection decision input into the data entry device by the user." Appx044 (2:62-64). The final aspect of the invention adds a "stand" supporting a "pair of dumbbells" that function with a single motor ("single operator") allowing remote and substantially simultaneous adjustment of the weight on the pair of selectorized dumbbells. Appx044, 045 (2:65-67, 3:1-9).

Here, the written description of the '771 patent "help[s] illuminate the true focus of a claim." *ChargePoint*, 920 F.3d at 766. Like the claims of the '771 patent, the written description broadly defines aspects of the invention in terms of their general function within the generic environment of selectorized dumbbells (an electric motor that *moves the selector*; a means *selectively acutable* for *adjusting*; a data entry device *to allow a user*; a stand, a pair of dumbbells, and a single motor

*selectively actuated* by a user). The written description does not describe these components (or the other elements of the Claims at Issue) as specially designed for use with selectorized dumbbells; instead, they are either described as conventional (off-the-shelf) devices or referenced in the specification generically (*e.g.*, a "sensor"). The written description of the '771 patent is consistent with the focus of the claims—automating the weight adjustment of selectorized dumbbells. The district court's order finding that claims 1-18 and 20 are directed to the abstraction of automating weight adjustment on selectorized dumbbells ("general outcome or effect of automated selectorized dumbbell weight stacking") should be affirmed. Order at *5, Appx014,

### 2. The Claims at Issue Do Not Recite a Specific Means or Method to Improve Selectorized Dumbbells

This Court's cases have "'reflected repeatedly,' that to avoid ineligibility, a claim must 'ha[ve] the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it.'" *American Axle & Mfg. v. Neapco Holdings LLC,* 967 F.3d 1285, 1296 (Fed. Cir. 2020) (quoting collection of cases at n.7). The district court correctly applied this line of cases, finding that the Claims

at Issue do not recite "specific processes or means of accomplishing specific processes or *means* of accomplishing automated weight stacking and are thus directed to the patent-ineligible subject matter of the outcome of automating a process previously done manually—a 'result' of a certain process rather than the means." Order at *5, Appx013. (citation omitted) (emphasis in original). PowerBlock challenges the district court's determinations, basing its primary argument on the repeated contention that the Claims at Issue are directed to specific means employing specially configured physical components to improve selectorized dumbbells. But the claim language belies PowerBlock's position. PowerBlock's "specific means" and "specially configured" components amount to no more than a litany of prior art equipment and conventional components performing their conventional functions.

#### 3. The Claims at Issue Are Directed to a Result or Effect That Itself is the Abstract Idea

The first element describes the prior art—a human operated selectorized dumbbell—for contextual purposes to simply recite the

generic physical environment in which the electric motor and data entry device function:[4]

> (a) a "dumbbell that provides an exercise weight that . . . is adjustable by coupling more or fewer weight plates" to each end of the dumbbell's handle

But assuming, for argument's sake, element (a) is not just a composite of prior art constituents for manually manipulated selectorized dumbbells, still element (a) merely recites the result of "'a dumbbell' which can be lifted, the weight of which 'is adjustable.'" Order at *5, Appx011.

The second element also recites a result-oriented solution without claiming specific structures or means to accomplish the purported improvement:

> (b) an "electric motor that may be selectively energized . . . [to] cause a desired number of weight plates to be coupled to each end of the handle"

This element expressly claims the function of the motor and no more. It recites an electric motor that is *energized* to *cause* adjustment of weight

---

[4] "In a [manual] selectorized dumbbell, a handle is inserted into the gap between the left and right stacks of weight plates. A selector is then manipulated to determine how many of the left and right weight plates of the weights are coupled to the left and right ends of the handle." Appx044 (1:29-33).

plates. But this element, like the one preceding it, omits *how* the electric motor is energized, *how* the motor is configured with a selectorized dumbbell, or *what type* of electric motor can effectuate the weight adjustment. These deficits leave this claim element with little more substance than supplying electricity to an electric motor; a broad and purely result-oriented claiming style that was not lost on the district court at oral argument:

> POWERBLOCK COUNSEL: The electric motor must be capable of being selectively energized, meaning activated, such that it can couple more or less weight plates at the end of the handle.
>
> THE COURT: I mean isn't that a way of saying the motor needs to be turned on so it can pick up weights?

Appx261:5-20. Without more—without claiming a specialized or specifically configured electric motor—this element amounts only to use of "an electric motor 'as a tool to automate conventional activity.'" Order at *n. 4, Appx013 (citing *McRO*, 837 F.3d at 1).

Rather than recite part of a specific system to improve selectorized dumbbell weight adjustment, the final element, too, functionally describes end results:

> (c) a "data entry device" through which a user can "input a weight selection decision that operatively controls the

> energization of the motor to adjust the exercise weight of the dumbbell . . . .”

Here, a data entry device allows a user to adjust the weight of the dumbbell. But this element only claims the conventional function of a generic data entry device in a mechanical system, *i.e.*, receiving user input to manipulate another component (in this case controlling a motor). Absent from this final element is a specialized or specific data entry device that controls the electric motor in any way, save one that is self-defined: applying electricity to an electric motor.

Leaving these representative elements behind, PowerBlock turns to claim 1 for language to support its “specific means or method” arguments. PowerBlock contends that the “selectorized dumbbell” and “electric motor” limitations of claim 1 each impart “specific requirements,” removing claim 1 from a level of abstraction. PowerBlock’s short argument simply paraphrases the language of claim 1.

> Claim 1 includes specific requirements for the “selectorized dumbbell” and “electric motor” limitations. Its “selectorized dumbbell” of claim 1, including a “movable selector having a plurality of different adjustment positions,” with a selector “configured to couple selected numbers” of weight plates to the dumbbell handles “depending upon the adjustment

> position in which the selector is disposed . . . .” [AOB at 28 (citation omitted).]
>
> Its “electric motor” is “operatively connected to the selector” and configured to “physically move[] the selector” into the appropriate adjustment position “when energized from a source of electric power . . . .” [*Id.*]

Addressing “selectorized dumbbell” first, this limitation of claim 1 (like representative element (a) above) describes only sub-components of prior art selectorized dumbbells. Prior art selectorized dumbbells, as described in the specification, included a selector that is “manipulated” and “positioned” (movable to an adjustment position) “to pick up selected numbers of weights” (configured to couple selected numbers of weights). Appx044 (1:23-37). Repeating elements of prior art selectorized dumbbells does not imbue claim 1 with any specific means or method.

PowerBlock’s reliance on language from claim 1 relating to the electric motor is no more persuasive. The actual language from claim 1 is “an electric motor that is *operatively connected* to the selector at least whenever a weight adjustment operation takes place, wherein the electric motor when *energized* from a source of electric power physically *moves* the selector into the adjustment position corresponding to the

desired exercise weight that was selected for use by the user." Appx049 (12:4-10) (emphasis added). This language is drafted in purely functional terms (operatively connected, when energized, to move the selector) that strictly avoids limitations restricting *how* the electric motor is connected to the motor or *how* it moves the selector.

The specification describes how a controller "can selectively apply electrical power to [a] motor" and how "[p]recise control of the rotation of [the] motor [ ] can be achieved using a stepper motor or a shaft encoder . . . to precisely measure and determine the amount of rotation of motor drive shaft." Appx047 (7:16-24). But, of course, those restrictions on how the electric motor operates to move the selector are not in the claims.

#### 4. The *EcoServices* Decision Illustrates the Claims at Issue are Directed to an Abstract Idea

PowerBlock's reliance on cases involving claims directed to specific processes or the use of specific, unconventional components for achieving a result is misplaced, principally because the Claims at Issue do not recite such processes or components. Nonetheless, PowerBlock contends this Court's analysis, in the unpublished decision of *EcoServices, LLC v. Certified Aviation Serv., LLC*, somehow "confirms"

that the Claims at Issue are not abstract but are, instead, directed to specific and concrete solutions to problems with prior art selectorized dumbbells. 830 F. App'x 634 (Fed. Cir. 2020); AOB 32. The claims found valid under § 101 in *EcoServices* recited specific means or methods because the components were "directed to a specific system" that was "configured in a certain way to create technical improvements to systems for washing jet engines" and not to "a result or effect that itself is the abstract idea." *Id.* at 642-43. The Claims at Issue here fail on both accounts. The Claims at Issue "recite the mere desired result of automated [weight adjustment on selectorized dumbbells]" and do not "recite a specific solution for accomplishing that goal." *Id.* at 642.

PowerBlock contends claim 20 of the '771 patent tracks tightly to one of the claims at issue in *EcoServices*, but PowerBlock doesn't say how. Instead, PowerBlock provides a heavily paraphrased and truncated version of the *EcoServices* claim, probably because claim 20 and the claim at issue in *EcoServices* are vastly different. The claim at issue in *EcoServices* (at least the claim PowerBlock relies on) was directed to a system for washing turbine engines, including:

> a *washing unit* for providing a washing liquid to the turbine engines;

> an *information detector* configured to gather information related to engine type; and
>
> a *control unit* configured to accept the information related to engine type from the information detector and to determine a washing program to be used as a function of the information relating to engine type from a set of preprogrammed washing programs, and further configured to regulate the washing unit according to washing parameters associated with the washing program used.

*Id.* at 636 (italics identifying components added). Focusing only on the *control unit* element of the *EcoServices* claim, it stands to reason the *EcoServices* claim was found to recite a specific system, configured in a certain way to create technical improvements to systems for washing jet engines. The *control unit* accepts information gathered by another claim element, the *information detector*, and then synthesizes that information in two ways. It (1) determines a washing program to be used (2) as a function of the information relating to engine type from a set of preprogrammed washing programs. Then the control unit regulates the *washing unit* according to washing parameters associated with the washing program used. Just the *control unit* limitation of the *EcoServices* claim recites a specific system configured to interface with the other components (*washing unit* and *information detector*) of the claim.

Presumably, PowerBlock likens the data entry device of claims 2 and 20 of the ’771 patent to the *control unit* because the data entry device also accepts information. But that’s were any comparison ends. The data entry device of the ’771 patent allows a user to input a weight value that, in an unspecified way, “operatively controls the energization of the motor.” With this Court’s analysis in *EcoServices* as a guide, the claims of the ’771 patent do not approach a patent-eligible specific means or method that improves the relevant technology.[5]

### C. The Claims at Issue Fail *Alice* Step 2

The Claims at Issue do not include “transformative” elements that amount to “significantly more” than the abstract idea itself. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1289-90 (Fed. Cir. 2018). There are limits on what these additional elements can be. They cannot be “‘well-understood, routine, conventional activit[ies]’ previously known to the industry.” *ChargePoint*, 920 F.3d at 773. Even if the additional

[5] In order to be at all analogous to *EcoServices*, a claim directed to a selectorized dumbbell would have to recite, for example, an information detector configured to assess fitness levels of individual users, a control unit to accept the fitness assessment and determine an exercise set as a function of the fitness assessment from a set of preprogrammed exercise sets, and then control the selectorized dumbbell to provide such an exercise set to the user.

elements are novel or non-routine, that may still be insufficient. *Id.* They must amount to "significantly more" than the abstract idea. *See Mayo*, 566 U.S. at 72-73.

### 1. The Claims at Issue Recite Conventional Components Performing as Expected

As the district court correctly determined, "the benefits identified by claims 1-18 and claim 20 of the '771 patent are generally those conferred by the simple fact of automation and the removal of human operators rather than any benefit of the particular methods or processes identified in the patent."Order at *7 (*citing FairWarning,* 839 F.3d at 1095-97), Appx018. The claims and specification fully support the district court's decision.

The Claims at Issue recite only known and conventional components (*i.e.*, "electric motor," "data entry device," "stand," "sensor," and mechanical "fingers") each performing its conventional function.[6] "[A]t a high level, claims 1-18 and claim 20 of the '771 patent recite 'generic, conventional elements' . . . merely automating conventional

---

[6] PowerBlock never asserted in its Complaint (Appx052), district court briefing (Appx143), or Opening Brief that these components, in themselves, are not conventional.

selectorized dumbbell functions and process." Order at *7, Appx018. For these reasons, the claims fail to recite any inventive concept that provides significantly more than the abstract idea itself.

The '771 patent purports to achieve several advantages over manually adjustable selectorized dumbbells. For example, the '771 patent asserts that by automating the adjustment of selectorized dumbbells, "the possibility that the user might not fully or correctly engage the selector" can be avoided and weight adjustments on multiple dumbbells may be accomplished simultaneously. Apxx044, (1:49-67). "Sensors and interlocking fingers that retain the dumbbell in place during a weight adjustment operation" are also claimed benefits of the '771 patent. *Id*. (1:49-67), AOB at 10-11. Taking these assertions as true, these purported improvements originate exclusively through the removal of human operators, and are achieved through and incidental to the abstract idea itself. Relying on conventional technology to "perform routine tasks more quickly or more accurately is insufficient to render a patent claim eligible." *OIP Technologies*, 788 F. 3d at 1370.

The specification is "useful in determining what is well-known or conventional," *Intellectual Ventures I LLC v. Symantec Corp.,* 838 F.3d

1307, 1317 (Fed. Cir. 2016), and can confirm that the generic components recited in the claims "behave exactly as expected according to their ordinary use," *In re TLI,* 823 F.3d 607, 615 (Fed. Cir. 2016). The specification of the '771 patent describes the components and their expected functions in entirely conventional terms:

> [I]t is obvious that selectors [of the '771 patent] of selectorized dumbbells can have many forms that will dictate various different connections . . . [s]electorized dumbbells [of the '771 patent] are similar to those shown in [PowerBlock's prior art patent. Appx048, 045 (9:20-23, 4:41-43) (reference numbers removed).]
>
> [T]he term "motor" or "motorized" is not to be limited to the specific type of [the] motor shown herein having a rotatable drive shaft, but is meant to apply to any powered device that converts electrical energy into physical motion, e.g. a solenoid, a magnet, etc. [Appx049 (11:43-47) reference numbers removed).]
>
> [The] data entry device could lack a visual display and have only keys or buttons . . . [s]uch data entry devices are found on a host of products such as personal computers, cell phones, television remote controls, etc. [Appx049, 044 (11:48-49, 2:4-6) reference numbers removed).]
>
> [T]he structure and exact method of operation of interlock fingers 74 can obviously be varied. [Appx047 (8:36-37) reference numbers removed).]
>
> In the manual system of [the '771 patent], data entry device, controller, motor, and interlock sensors would all be deleted when the manual system is used as a replacement for the motorized system . . . [h]owever, these components could all

> be kept if the manual system of [of the ’771 patent] is used as a backup for the motorized system. [Appx049 (9:8-13) reference numbers removed).]
>
> [T]he manual system disclosed herein . . . still features remote and simultaneous actuation of a pair of dumbbells using a single operator, i.e. hand wheel. [Appx049 (11:38-41) reference numbers removed).]

This recitation of ordinary components in the specification provides no inventive concept whatsoever.

PowerBlock does not identify any “additional elements” recited in any claim that would transform the nature of the claims into one that meets the requirements of § 101. Rather, PowerBlock simply states that “both these arrangements and the components themselves were nonconventional in the field of selectorized dumbbell technology.” AOB at 53. But the test at *Alice* Step 2 does not simply ask whether the arrangement of elements recited in the claims is new or, as in this case, whether a data entry device and electric motor have ever been coupled to a dumbbell. Rather, the relevant inquiry is “whether each of the elements in the claimed product . . . involve well understood, routine, conventional activity” and “whether all of the steps as an ordered combination” add something “that is not already present when the steps

are considered separately[.]" *Chamberlain Group, Inc. v. Techtronic Indus. Co.,* 935 F.3d 1341, 1348-1349 (Fed. Cir. 2019).

PowerBlock has not shown that the components recited in the claims of the '771 patent, either individually or as an ordered combination, perform anything other than a well-understood, routine, conventional activity. The district court's findings that the separate limitations of claims 1-18 and 20 of the '771 patent, read in light of the specification, "do not add significantly more than the abstract idea of the end-result of an automated selectorized dumbbell" should be affirmed. Order at *7, Appx019.

### D. The District Court Properly Accepted as True All Plausible and Specific Factual Allegations Under *Alice* Step 2

PowerBlock seeks to overturn the district court's order by trying to manufacture questions of fact. But "[i]n ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And this Court "disregard[s] conclusory statements when evaluating a complaint under Rule 12(b)(6). A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (citations omitted). "Only 'plausible and specific factual allegations that aspects of the claims are inventive are sufficient.'" *IBM Corp. v. Zillow Group, Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) (citing *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1317 (Fed. Cir. 2019)). And the Court can affirm on "any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1029–30 (10th Cir. 1996). Applying these principles, PowerBlock did not identify plausible factual allegations concerning additional claim elements that, if construed in its favor, would amount to significantly more than the abstract idea itself.

PowerBlock alleges "[t]he only support the district court provided identified [sic] for its Step-Two fact findings was iFit's motion to dismiss

brief—bald attorney argument." AOB at 55. This contention is belied by district court's analysis. In addition to the specification and claims of the '771 patent, the district court reviewed and relied upon PowerBlock's Complaint (including exhibits) and specific portions of the specification of the '771 patent that "tout[ ] the benefits of the patented selectorized dumbbell" as cited by PowerBlock in its Opposition to iFit's motion to dismiss. Order at *4 and *7, Appx009 and 017 (citing PowerBlock's Opposition brief ["ECF No. 29 at 13"] Appx161).[7] On that record, the district court correctly determined "[t]he dumbbell, motor, and user interface at issue in claims 1-18 and claim 20 are all used conventionally and in their generic, routine, and conventional use cases. Further, the function performed by each of the elements in dependent claims 2-18 is similarly 'conventional' and lacks any indicium of inventiveness." Order at *7, Appx017.

Ultimately, PowerBlock identifies only one "factual finding" it alleges was not construed in its favor—use of the data entry device with

[7] PowerBlock's Opposition brief at 13 (Appx161) directed the district court to portions of the '771 specification identifying "benefits" of the claimed weight selection system (Appx044 (1:39-54, 1:55-61, 2:1-8, 2:8-10), Appx049 (11:16-19, 11:16-19)).

a selectorized dumbbell. AOB at 55. But PowerBlock concedes, as it must, that the data entry device itself is a conventional component. *Id.* at 56 (Appx 044 (2:1-4) ("[M]any people today are quite familiar with electronic devices in which data entry is accomplished by the manipulation of an alpha-numeric keyboard or a numeric keypad or the like."). PowerBlock, instead, argues that the data entry device is unconventional because the '771 patent "explicitly states they have never been used in a selectorized dumbbell." *Id.* PowerBlock misapplies the law. "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018). Here, including a ubiquitous device for data entry (keyboard or numeric keypad) to input information (desired amount of weight) "is merely a conduit for the abstract idea" of automating weight adjustment on a selectorized dumbbell. *In re TLI,* 823 F.3d at 612. And the conclusory statement from the '771 patent that "no similar data entry device has been used to adjust the numbers of weights coupled to each end of the handle of a selectorized dumbbell," even accepted as

true, does not help PowerBlock. Appx044 (2:6-7). Incorporation of the data entry device "simply provides the environment in which the abstract idea . . . is carried out." *In re TLI,* 823 F.3d at 614. That is insufficient to provide an inventive concept at *Alice* Step 2. *Id.*

### E. The District Court Properly Determined the Focus of the Claims at Issue l (Alleged Errors 1 and 2)

PowerBlock ascribes two errors to the district court that amount to a generalized charge that the court improperly determined the *focus* of the Claims at Issue.

PowerBlock first alleges that the district court erred "by focusing not on what the Claims at Issue are 'directed to,' but on their breadth [alleged error 1]." AOB at 39. PowerBlock identifies an alleged problem (breadth) but attributes it to the wrong source (to the district court rather than the claim language). The Claims at Issue are drafted with functional language oriented to an end-result, strictly avoiding limitations on *how* the result is achieved. In that way the Claims at Issue are purpose-built to achieve maximum breadth to capture a wide range of potentially infringing systems. But claiming an invention broadly, especially through functional language, comes at a price; here that price is patent claims directed to an abstract idea rather than a

concrete technical solution to a problem in the prior art. *ChargePoint,* 920 F.3d at 769 ("The *breadth* with which this claim is written further indicates that the claim is directed to the abstract idea . . . ." (emphasis added)); *see also Yu*, 1 F.4th at 1045 ("[T]he mismatch between the specification . . . and the *breadth* of claim 1 underscores that the focus of the claimed advance is the abstract idea . . . ." (emphasis added)); *Intellectual Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the *breadth* of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'" (quoting *Alice,* 573 U.S. at 219) (emphasis added)). The district court properly assessed the breadth of the Claims at Issue to correctly determine they were directed to ineligible subject matter. Order at *6, Appx010 ("Claim 20 is impermissibly broad and outcome-oriented in construction.")

PowerBlock also argues the district court oversimplified the Claims at Issue (alleged error 2), even reproducing claim 20 of the '771 patent and crossing out language it alleges the district court ignored. AOB at 44. But PowerBlock's strikethroughs serve only to highlight the

result-based functional language of the claims and punctuate the dearth of limitations on *how* the result is achieved. Claim 20 recites the functional results of "a dumbbell that *provides* exercise weight" that is "*adjustable* by *coupling* more or fewer weight plates"; "an electric motor that may be *selectively energized*" which "will *cause* a desired number of weight plates *to be coupled*"; and "a data entry device to *allow* the user to *input* a weight selection decision that *operatively controls* the *energization* of the motor to *adjust* exercise weight." Appx050 (13:13-26). Claim 20 "requires [these] functional results . . . but does not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337.

Rather than "oversimplify" the claims, the district court simply noted functional claiming language emblematic of claims directed to an abstract idea. "[T]he '771 patent's independent claims merely describe the general function of components (dumbbells providing exercise weights, motors that cause coupling, and data entry devices that allow users to input weight), rather than '*how'* the parts perform the functions claimed." Order at *5, Appx011 (emphasis in original). The functional language and end-result orientation of the Claims at Issue

lead to the district court's ultimate conclusion that "[t]hese claims offer no meaningful additional description of specific processes or *means* of accomplishing automated weight stacking and are thus directed to the patent-ineligible subject matter of the outcome of automating a process previously done manually—a 'result' of a certain process rather than the means." *Id.*, Appx013 (emphasis in original).

### F. The District Court did not Treat Claim 20 as Representative (Alleged Error 3)

PowerBlock ascribes another error to the district court for "improperly treating claim 20 as representative of the Claims at Issue." AOB at 48. PowerBlock's argument is, however, contradicted by the district court's express finding that claim 20 is *not* representative of all claims of the '771 patent.

The district court noted there was "strong reason to believe that claim 20 should be treated as representative:"

> Plaintiff's decisions (a) to use claim 20 to characterize the '771 patent generally in the Complaint, *see* Complaint ¶ 18, *as well as* in their opposition memorandum, *see* ECF No. 29 at 11, (b) to point to claim 20 several times throughout the Complaint as the infringed claim, *see* Complaint ¶¶ 24, 25, 32, (c) to use claim 20 as the basis for its patent claim chart attached to the Complaint as Exhibit C, *see* ECF No. 2-4, and (d) generally to individually identify only claim 20 through the course of the entire Complaint.

Order at *4, Appx008-009 (emphasis in original). Notwithstanding PowerBlock's emphasis on claim 20 throughout the proceedings,[8] the district court "ultimately [concluded] that claim 20 is not representative of the '771 patent," and assessed the claims individually. *Id.* Analyzing all of the Claims at Issue, the district court correctly concluded each claim was "directed to an abstract idea and implemented using generic components requiring performance of the same basic process" and "offer no meaningful additional description of specific processes or *means* of accomplishing automated weight stacking . . . ." Order at *5, Appx013 (emphasis in original).

These claims either restate the abstract idea of automating weight adjustment on a selectorized dumbbell, append generic and conventional components to the automating process, duplicate automation on two dumbbells, or mount the automating components (motor and data entry device) at various locations within the system—all as a "conduits[s] for the abstract idea." *In re TLI,* 823 F.3d at 612.

- *Claims 1-2*: tracking the elements of claim 20.

[8] PowerBlock also focuses on claim 20 throughout its opening brief. AOB at 14, 27, 44, and 47.

- *Claims 3-4*: adding "data entry keys or buttons" and a "visual display" to the data entry device.
- *Claims 5-6, 16-18*: mounting automating components on a "stand" or "handle" of the dumbbell.
- *Claim 7*: adding "sensors" for detecting proper weight position during automated adjustment.
- *Claims 8-11*: adding "gripping devices" for retaining weights during automated adjustment.
- *Claims 12-14*: duplicating weight adjustment on a "plurality" of dumbbells "substantially simultaneously" using a "single electric motor."

### G. The District Court Properly Considered Purported Advantages Over the Prior Art (Alleged Error 4)

The last error PowerBlock ascribes to the district court—disregarding advantages over the prior art—is just a truncated repackaging of its argument that the Claims at Issue recite specific means to solve problems with prior art selectorized dumbbells (AOB at 27-36), including another attempt to analogize claim 20 to a claim at issue in the *EcoServices* case. iFit's full response to those arguments is provided *supra* at Sections VI. B. 2-4. PowerBlock does add, however, two parting complaints about the district court's analysis: 1) the district court applied a strict rule that "'advantages flowing from 'removing the possibility of human error' cannot support patentability" and 2) by "failing to properly consider the technical advantages of the claimed

systems described in the ’771 Patent’s specification.” AOB at 51. PowerBlock is wrong on both accounts.

The district court, citing *EcoServices*, acknowledged that patents directed to automating manual processes are patentable if the claims “achieve a level of automation that provides an improvement over the prior art.” *EcoServices*, 830 F. App’x at 642. Applying this principle, the district court ultimately found that “[t]he claim language here describes an end result—such as the *causing* of weights to be coupled—without recitation of specific means of doing so, unlike as in *EcoServices.”* Order, at *5, Appx011 (emphasis in original). The district court also considered the purported technical advantages over the prior art described in the specification, specifically citing PowerBlock’s arguments on page 13 of its Opposition brief [9] as portions of “the written description [that] ‘tout[ ] the benefits of the patented selectorized dumbbell.’” Order, at *7, Appx017. But once again, the problem with the ’771 patent is the *claims as written*:

> While the specification outlines much more detailed parts and processes, claim 20 itself does not require such elements

---

[9] Citing the ’771 specification as identifying “benefits” of the claimed weight selection system (Appx044 (1:39-54, 1:55-61, 2:1-8, 2:8-10) Appx049 (11:16-19, 11:16-19)).

> (nor does it incorporate these elements by reference), but is instead much more broadly formulated.

Order, at *5, Appx011.

The district court properly considered PowerBlock's arguments that the Claims at Issue are directed to specific means providing technical advantages over the prior art, including its references to the specification. The district court correctly found those arguments unpersuasive.

## VII. CONCLUSION

Because claims 1-18 and 20 of the '771 patent are invalid under § 101, the district court's order should be affirmed.

Respectfully submitted this 15th day of April, 2024.

by: */s/ Mark W. Ford*
C.J. VEVERKA
MARK W. FORD
**MASCHOFF BRENNAN**
1389 Center Drive, Ste. 300
Park City, Utah 84098
Telephone: (435) 252-1360

L. REX SEARS
**MASCHOFF BRENNAN**
111 S Main Street, Ste. 600
Salt Lake City, Ut 84111
Telephone: (801) 297-1850

*Attorneys for Defendant-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024 an electronic copy of the foregoing **CORRECTED BRIEF FOR DEFENDANT–APPELLEE IFIT, INC.** was filed electronically with the U.S. Court of Appeals for the Federal Circuit by means of the Court's CM/ECF system and thereby causing a "Notice of Electronic Filing" to be served on all counsel of record.

Date: April 15, 2024

*/s/ Mark W. Ford*
Mark W. Ford

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this document contains 9,253 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Date: April 15, 2024

*/s/ Mark W. Ford*
Mark W. Ford