2024-1177

# United States Court of Appeals for the Federal Circuit

**POWERBLOCK HOLDINGS, INC.,**

*Plaintiff-Appellant*

**v.**

**IFIT, INC.,**

*Defendant-Appellee*

*Appeal from the United States District Court for the District of Utah in Case No. 1:22-CV-00132*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT POWERBLOCK HOLDINGS, INC.

Thomas J. Leach
Michael A. Erbele
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
(612) 332-5300

Joshua A. Hartman
MERCHANT & GOULD P.C.
1900 Duke Street, Suite 600
Alexandria, VA 22314
(703) 684-2500

May 13, 2024

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 28(a)(1) and 47.4, Counsel for Plaintiff-Appellant PowerBlock Holdings, Inc., certifies the following:

1. The full name of the party represented by me is:

   PowerBlock Holdings, Inc.

2. The name of the Real Party in interest represented by me is:

   N/A

3. Parent corporations and publicly held companies that own 10% or more of the stock in the party:

   PowerBlock Holdings, Inc. hereby states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

   Cameron M. Hancock, James T. Burton and Michael A. Eixenberger of KIRTON MCCONKIE

   Taylor R. Stemler of MERCHANT & GOULD P.C.

5. The title and number of any case known to counsel to be pending in this or any other court or agency, other than the originating case, that will directly affect or be directly affected by this court's decision in the pending appeal:

N/A

6. Organizational Victims and Bankruptcy Cases:

N/A

Dated: May 13, 2024

s/*Thomas J. Leach*
Thomas J. Leach

*Attorneys for Plaintiff-Appellant*
*PowerBlock Holdings, Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. iFIT'S STEP ONE ARGUMENT CONCEDES KEY POINTS AND IS OTHERWISE FLAWED .......... 3

A. Affirming the District Court's Decision Would Create an Outlier in Section 101 Jurisprudence .......... 3

B. The Dependent Claims Are Not Abstract .......... 4

C. iFIT's Analysis of Claims 1 and 20 Conflicts with the Relevant Case Law .......... 9

1. iFIT fails to address claims 1 and 20 "in their entireties," as precedent requires .......... 9

2. iFIT mischaracterizes case law providing that "specific combinations" of known components are nonabstract .......... 11

D. iFIT's Selective Discussion of the Specification Ignores Its Descriptions of the Invention's Technical Improvements .......... 14

E. iFIT's Attempts to Excuse the District Court's Errors Lack Merit .......... 18

1. iFIT neither disputes that "broad" differs from "abstract" nor contends that the '771 Patent claims a "fundamental practice" .......... 18

2. iFIT's attempt to rationalize the district court's oversimplification of the claims lacks merit .......... 20

3. iFIT mischaracterizes the district court's representative claim analysis .......... 21

4. iFIT mischaracterizes the district court's analysis of the '771 Patent's advantages over the prior art .......... 22

III. iFIT'S STEP TWO ARGUMENT FAILS TO ADDRESS THE CLAIMS "AS AN ORDERED COMBINATION," MISCHARACTERIZES THE DISTRICT COURT'S DECISION, AND CONFLICTS WITH PRECEDENT .......... 24

A. Like the District Court, iFIT Does Not Discuss the Claim Elements "as an Ordered Combination" .......... 24

B. In Attempting to Defend the District Court's Improper Factual Findings, iFIT Mischaracterizes the Court's Decision and Contravenes Case Law ........ 27

IV. CONCLUSION ........ 29

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) ....................4, 24

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020) ....................13, 14

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012) ....................3, 4

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ....................16, 24, 28

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ....................8, 21, 27

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F. 3d 1358 (Fed. Cir. 2020) ....................*passim*

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
927 F.3d 1306 (Fed. Cir. 2019) ....................28

*Chamberlain Grp. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) ....................26

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed Cir. 2019) ....................17, 18, 19

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ....................24

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
830 F. App'x 634 (Fed. Cir. 2020) ....................*passim*

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ....................4

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
792 F.3d 1363 (Fed. Cir. 2015) ....................19

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ....................................................................25

*Ioengine, LLC v. Paypal Holdings, Inc.*,
607 F. Supp. 3d 464 (D. Del. 2022)..................................................................18

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ..........................................................10, 15, 18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ....................................................................26

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 ................................................................................................26

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
874 F.3d 1329 (Fed. Cir. 2017) ....................................................................20

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
916 F.3d 1363 (Fed. Cir. 2019) ..............................................................20, 21

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) ....................................................................13, 19

**Statutes**

35 U.S.C. § 101 ..........................................................................1, 3, 4, 16

## I. INTRODUCTION

PowerBlock invented and claimed a new adjustable dumbbell that motorizes weight adjustment. Its ’771 Patent teaches the public how to make its invention, including by connecting tangible components such as an electric motor, movable weight selectors, a belt-and-pulley system, and rotatable drivers and configuring them to coordinate to perform a mechanical task. And in the ’771 Patent’s claims 1–18 and 20 (the “Claims at Issue”), PowerBlock defined the invention according to the full breadth to which it was entitled. The district court’s decision holding the Claims at Issue patent-ineligible under § 101 is an outlier and puts at risk every claim to a mechanical device. Indeed, affirming the district court’s decision would reshape § 101 jurisprudence. The tangible devices claimed in the ’771 Patent are *not* abstract and are protectible under § 101, which allows patents for “any new and useful . . . machine” or improved machine. 35 U.S.C. § 101.

iFIT’s responsive brief speaks loudly by what it does not say. iFIT does not dispute that the district court’s decision is an outlier under § 101. iFIT does not identify any case finding similar mechanical claims to be abstract. And iFIT’s brief does not meaningfully dispute that the dependent Claims at Issue recite specific means for motorizing weight adjustment in a selectorized dumbbell, such that they are nonabstract. Based solely on what iFIT does not dispute, reversal is warranted.

But iFIT's arguments are revealing; they rely on cherry-picked excerpts from the patent, the case law, and the district court's decision. iFIT's Step One argument improperly considers the '771 Patent's claim limitations as discrete subparts. But precedent requires addressing the claims in their entireties to assess their character as a whole. Next, iFIT agrees that *EcoServices, LLC v. Certified Aviation Services, LLC*, 830 F. App'x 634 (Fed. Cir. 2020), is a key case, but mischaracterizes its reasoning. iFIT relies on the '771 Patent's specification, but its selective argument fails to address the invention's advantages over the prior art. Finally, iFIT's attempt to excuse the district court's four reversable errors relies on inapposite case law and mischaracterizations of the court's decision while conceding that the decision rested on flawed legal premises.

iFIT's Step Two analysis is similarly flawed. Although claims may provide an "inventive concept" when the elements are considered "as an ordered combination," iFIT only addresses the elements separately, echoing its flawed Step One analysis. Even though the district court's Step Two analysis cites neither the complaint nor the '771 Patent to support its factual findings that claim elements are "generic" and "conventional," iFIT argues otherwise. Tellingly iFIT points to portions of the Court's decision that have nothing to do with this issue. Finally, iFIT relies on inapposite authority—cases that concern fundamental data-management practices implemented on generic computers. The '771 Patent's specific

arrangements of physical claim elements to perform mechanical tasks are readily distinguishable from the "do it on a computer" cases cited by the district court.

In sum, iFIT does not dispute the core elements of PowerBlock's appeal, and where it does disagree, it relies on mischaracterizations of case law, of the evidence, and of the district court's decision. iFIT's argument should be rejected, and the district court's decision should be reversed, because PowerBlock's claims directed to a mechanical device are patent eligible.

## II. iFIT's Step One Argument Concedes Key Points and Is Otherwise Flawed

### A. Affirming the District Court's Decision Would Create an Outlier in Section 101 Jurisprudence

PowerBlock explained in its opening brief ("AOB") that affirming the district court's decision would create an outlier in § 101 jurisprudence because the Claims at Issue are directed to specific combinations of mechanical components performing physical processes that produce tangible results. AOB at 36–38. The district court's Step One conclusion erroneously relied on inapposite cases concerning generic computer components used to collect, organize, and present data. *See id.* at 36–37 (discussing case law). This Court's § 101 precedent focuses on such claims due to the inherent eligibility concerns for computer-based inventions directed to computational processes, which are not present here. *See id.* (quoting *Bancorp*

*Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1277–78 (Fed. Cir. 2012)).

In its Responsive Brief ("RB"), iFIT does not address this issue and thus concedes that an affirmance would lead § 101 into uncharted territory. iFIT also does not and cannot identify any case—decided at any level—resulting in an ineligibility determination based on analogous facts. But a key part of this Court's approach to § 101 is to compare claims to those from previous cases involving eligibility questions. *See Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) ("[T]he decisional mechanism courts now apply [under § 101] is to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided."); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) ("[B]oth this [C]ourt and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."). The conceded lack of any factually similar authority warrants reversal.

### B. The Dependent Claims Are Not Abstract

iFIT's brief does not meaningfully dispute that the '771 Patent's dependent claims are directed to patent-eligible subject matter. Its Step One argument does not discuss those claims. *See* RB at 17–31.

But PowerBlock explained that the ’771 Patent’s dependent claims “are directed to ‘specific means’ that provide technical improvements over prior art selectorized dumbbells because they recite further specific elements for motorizing weight adjustment.” AOB at 28. These specific structural limitations, arranged to produce new, inventive machines, include a stand comprising “a driver releasably connected to the selector” (claims 5, 15) and safety features such as a sensor that inhibits weight adjustment when a dumbbell is improperly positioned (claim 7) and gripping devices, including mechanical “fingers” that hold the dumbbell in place for weight adjustment (claims 8–11). *See id.* at 29. The dependent claims are directed to specific arrangements of the overall system, including a single-motor arrangement that provides simultaneous weight adjustment of two or more dumbbells (claims 12–14) and a self-contained arrangement that includes all weight selection and adjustment components mounted on the dumbbell’s handle (claims 16–18). *See id.* The ’771 Patent touts these specific features and arrangements as improvements to selectorized dumbbell functionality. *See id.* at 31 (discussing safety features recited in claims 7–11 and simultaneous weight adjustment in claims 12–14; citing Appx049(11:27-37)); *see also* Appx049(11:24-26).[1]

[1] Indeed, the specification identifies “simultaneous actuation of a pair of dumbbells using a single operator” as an advantage over the prior art even for an unclaimed manual system that uses a handwheel instead of “motor activation or an electronic data input entry device.” Appx049(11:38-42).

iFIT's only attempt to address the dependent claims comes in disputing that the district court treated claim 20 as representative of claims 1–18. *See* RB at 44–45. But iFIT's attempt is conclusory—it simply dismisses them generally as "conduits[] for the abstract idea" and oversimplifies the claim language. *Id.* at 44.

Comparing iFIT's characterizations of the dependent claims to their *actual* language shows the extreme nature of iFIT's (and by extension the district court's) position. Claim 14, which incorporates the systems of claims 1, 12, and 13, requires the following mechanical elements:

> a plurality of selectorized dumbbells, which each include left and right stacks of nested weight plates; a handle having left and right ends; and a movable selector having a plurality of different adjustment positions that is configured to couple selected numbers of left and right weight plates to the respective ends of the handle depending upon the selector's adjustment position;
>
> a stand having an upper surface that supports the dumbbells during weight adjustment operations;
>
> a single electric motor having a rotatable drive shaft that is mounted on the stand below the surface and is operatively connected to the dumbbells' selectors at least whenever a weight adjustment operation takes place, such that only one motor adjusts both dumbbells' selectors substantially simultaneously;
>
> a plurality of rotatable drivers corresponding in number to the plurality of selectorized dumbbells, with each driver being releasably connected to one dumbbell's selector when the dumbbell is on the stand, and the drivers accessing the selectors from below through holes in the standard's upper surface; and
>
> a belt and pulley system mounted below the upper surface that connects the motor drive shaft to the drivers and rotates them substantially simultaneously when the motor rotates.

*See* Appx049(11:54-12:10), Appx050(13:6-34). Similarly, claim 11, which incorporates the systems of claims 1, 2, 5, and 8–10, requires the following mechanical elements:

> a selectorized dumbbell that includes left and right stacks of nested weight plates; a handle having left and right ends; and a movable selector having a plurality of different adjustment positions that is configured to couple selected numbers of left and right weight plates to the respective ends of the handle depending upon the selector's adjustment position;
>
> a stand having an upper support surface that supports the dumbbell during weight adjustment operations when it is in the proper position;
>
> an electric motor mounted on the stand that, when energized, drives a driver that is releasably connected to the dumbbell's selector when the dumbbell is on the stand;
>
> an electrically operated data entry device to allow a user to input a desired exercise weight;
>
> a controller operatively communicating with the data entry device and the motor for energizing the motor from an electric power source to cause the motor to move the selector into the adjustment position that corresponds to the desired weight input by the user into the data entry device;
>
> a device configured to grip the dumbbell for retaining it in the proper weight adjustment position on the stand during a weight adjustment operation that comprises a plurality of fingers that are movably supported on the stand and that project through slots in the upper support surface, such that they are continuously located above the support surface;
>
> wherein the fingers are pivotal relative to the upper support surface such that they can be swung (i) laterally outwardly of opposed sides of the dumbbell to a first position in which they are clear of the dumbbell and (ii) laterally inwardly to a closed position in which the fingers' upper ends overlie opposed sides of the dumbbell to hold the dumbbell in place on the stand to a second closed position in which the upper ends of the fingers.

*See* Appx049(11:54-12:19, 12:29-37, 12:47-67), Appx050(13:1-5).

These detailed claim requirements provide the exact manner by which the system of claim 14 accomplishes simultaneous weight adjustment and by which the system of claim 11 uses specific gripping fingers to retain a dumbbell in place during weight adjustment. But iFIT oversimplifies claim 14 as "duplicating weight adjustment on a 'plurality' of dumbbells 'substantially simultaneously' using a 'single electric motor'" and claim 11 as "adding 'gripping devices' for retaining weights during automated adjustment." RB at 45. And of course, the district court did not discuss claims 14 or 11 at all. *See* Appx013.

The '771 Patent's dependent claims provide even more specific means for accomplishing discrete tasks, such as simultaneously adjusting the weights of a pair of selectorized dumbbells and securing a dumbbell in place during weight adjustment operations. These further specific means improve upon selectorized dumbbell technology. Neither iFIT nor the district court meaningfully addressed these claims, such that there is no reasonable dispute they are nonabstract. The district court's decision should thus be reversed at least as to claims 2–18. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (vacating summary judgment of ineligibility as to dependent claims that recited "specific method" that improved computer functionality).

## C. iFIT's Analysis of Claims 1 and 20 Conflicts with the Relevant Case Law

### 1. iFIT fails to address claims 1 and 20 "in their entireties," as precedent requires

iFIT contends that claims 1 and 20 only recite the result of automated weight adjustment without providing the means for achieving it, RB at 22–28, but the claim language contradicts this. Both claims recite specific, mechanical solutions for weight adjustment that comprise physical components interacting in particular ways. The system of claim 20 accomplishes weight adjustment by means of: (1) a data entry device that allows user to input weight selection decision; (2) that operatively controls a selectively energized electric motor to adjust the dumbbell's weight; (3) according to the inputted weight selection decision; (4) by coupling the desired number of weights to each end of the dumbbell's handle. *See* Appx050(14:33-47). The system of claim 1 accomplishes weight adjustment by means of: (1) an *electric motor* that is operatively connected to the *movable selector* of a selectorized dumbbell having *stacks of nested weight plates* at least during weight adjustment; (2) where the *motor* physically moves the *selector* into the adjustment position corresponding to the desired weight; (3) selected by the user; (4) with the movement of the selector to couple selected numbers of left and right weight plates to the respective ends of the *dumbbell's handle*. Appx050(11:54-12:10).

These claimed systems provide technical improvements over the prior art. Both systems enable remote weight adjustment and simultaneous weight adjustment, functionalities not available in prior art selectorized dumbbells. AOB at 12–17. Further, both systems feature enhanced safety and ease of use compared to prior art systems. *Id.* Because claims 1 and 20 recite a system of specific, tangible components coordinating to perform specific steps to accomplish a specific result in a way that improved upon the prior art, they are directed to specific means and not to an abstract idea. *See CardioNet, LLC v. InfoBionic, Inc.*, 955 F. 3d 1358, 1368 (Fed. Cir. 2020); *EcoServices*, 830 F. App'x at 643 (claims directed to "specific combination" of components "configured in a certain way to create technical improvements" over prior art were not abstract).

iFIT devotes its Step One argument to attacking each separate element as performing a discrete "function" and achieving an individual "result." RB at 22–28. But this contradicts the requirement that courts consider the claims "*in their entirety* to ascertain whether their character *as a whole* is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (emphasis added). iFIT does not address the systems of claims 1 and 20 "in their entiret[ies]" to ascertain "as a whole" their character. Its argument focuses on discrete subparts and should be rejected.

### 2. iFIT mischaracterizes case law providing that "specific combinations" of known components are nonabstract

iFIT also argues that the claims do not recite "specific underlying technologies or methodologies (*e.g.*, a specialized motor or improved mode of data entry)," RB at 19, but it identifies no authority providing that claims must recite an individual component or technique that is "specialized" or "improved." Rather, this Court's case law shows that claims that recite a "specific combination" of previously known elements to improve upon the prior art are patent-eligible. *EcoServices*, 830 F. App'x at 643. In *EcoServices*, the defendant argued that the asserted patent's claims were abstract because they combined "a generic computer" with prior art components "to automate the conventional [jet engine] washing process traditionally performed by human operators." *Id.* at 641. This Court rejected that argument. It concluded that the claims were "directed to a specific combination of a type of washing unit, information detector, and control unit, configured in a certain way to create technical improvements to systems for washing jet engines." *Id.* at 643. Rather than identifying any of the individual components as "specialized" or "improved," the Court deemed the claims patent eligible because "the system itself is new." *Id.* at 645. That is the case here.

iFIT's attempt to distinguish *EcoServices* misrepresents the Court's decision. RB at 28–31. iFIT seizes on the *EcoServices* claims' "control unit," arguing that this limitation alone "recites a specific system configured to interface with the other

components (*washing unit* and *information detector*) of the claim." *Id.* at 30. iFIT conjures this reasoning out of thin air. Nothing in the Court's opinion suggests it relied on the "control unit" to hold the claims eligible. Instead, the Court's eligibility holding rested on the "specific combination" of components and the advantages of the systems as a whole: "The systems of the claims at issue achieve a level of automation that provides an improvement over the prior art human-operated washing systems." *EcoServices*, 830 F. App'x at 642, 643.[2]

This is true here. Claims 1 and 20 both recite "specific combination[s]" of physical components that provide technical improvements over prior art selectorized dumbbell systems, including enabling remote weight adjustment and simultaneous weight adjustment and enhancing safety and ease of use. Regardless of whether the separate components are "specialized" or "improved," the "system itself is new." Like *EcoServices*, claims 1 and 20 are therefore directed to patent-eligible subject matter, and iFIT's attempt to distinguish that case should be rejected.

---

[2] iFIT also exaggerates the sophistication of the "control unit." That component performed two functions: (1) "determin[ing] a washing program . . . from a set of preprogrammed washing programs" based on "information relating to engine type"; and (2) regulating the "washing unit" based on the washing program's "parameters." *EcoServices*, 830 F. App'x at 636. But function (1) is essentially selecting options from a set based on entered data, while function (2) is essentially performing a sequence of operations according to instructions. As both these functions are basic computing tasks, the Court focused not on the "control unit" standing alone but on its combination with other components to make up the improved systems.

iFIT identifies no authority to the contrary. It relies on *Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021), but there, the claims did not recite a new combination of components. Rather, the claims recited a previously known combination of camera and computer components to perform a mental process—"using multiple pictures to enhance each other"—that "ha[d] been known by photographers for over a century." *Id.* at 1043. Here, the '771 Patent's written description expressly states that the recited components had not previously been used in selectorized dumbbell systems, and the claimed systems conduct mechanical processes to produce physical results rather than mental processes to produce intangible ones.

iFIT also relies on *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, 967 F.3d 1285 (Fed. Cir. 2020). But there, the claim found ineligible undisputedly recited a *natural law—not an abstract idea*—without requiring either "established" or "'improved' processes" for implementing it. *Id.* at 1294–95. The Court noted that "[w]hat is missing [in the claim] is *any physical structure or steps* for achieving the claimed result." *Id.* at 1295 (emphasis added). Here, by contrast, claims 1 and 20 undisputedly recite physical structures—"selectorized" or "adjustable" dumbbells, "operatively connected" or "selectively energized electric motors," a "movable selector," a "data entry device"—that coordinate to adjust the dumbbell's weight per user input.

*American Axle* actually supports these claims' eligibility. There, the Court described the eligibility requirement as requiring the patent claim to "identify 'how' [a] functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim." 967 F.3d at 1302. Claims 1 and 20 do this. As discussed above, they recite concrete physical structures (*e.g.*, a selectorized dumbbell that includes a movable selector, a selectively energized motor, a data entry device) that coordinate in a specific manner (*e.g.*, the data entry device receives a user's weight selection decision; the data entry device then causes the motor to be energized; when energized, the motor causes weights to be coupled to each end of the dumbbell's handle; weights are coupled according to the user's weight selection decision) that technically improves upon prior art selectorized dumbbells. Claims 1 and 20 are therefore patent-eligible. iFIT's argument should be rejected, and the district court's decision should be reversed.

### D. iFIT's Selective Discussion of the Specification Ignores Its Descriptions of the Invention's Technical Improvements

iFIT also relies on the '771 Patent's specification, RB at 20–22, but its discussion is selective and misleading. First, iFIT cites the statement from the end of the patent's "Background of the Invention": "There is a need in the art to automate and ease the task of adjusting the weight of selectorized dumbbells." Appx044(2:8-10). As a threshold issue, the language of the Claims at Issue shows they are directed to a specific solution for weight adjustment in a selectorized

dumbbell, and nothing in this statement suggests otherwise. Moreover, this statement shows that the claimed invention provides a mechanical device that solves a technical problem: automating and easing a manual process. As this Court has explained, "automation alone is not necessarily abstract." *EcoServices*, 830 F. App'x at 645; *see also McRO*, 837 F.3d at 1313 ("[P]rocesses that automate tasks that humans are capable of performing are patent eligible if properly claimed . . . .").

Confirming that the Claims at Issue provide a technical improvement to selectorized dumbbells is the specification's description of the invention's benefits. As explained previously, these technical improvements enabled remote and simultaneous weight adjustment—functionalities not available in prior art devices—and enhanced safety and ease of use. The Court relied on similar advantages in *EcoServices* as "important to [its] determination that the claims provide[d] a technical improvement to jet engine washing." 830 F. App'x at 642–43 (discussing advantages described in the specification, including "minimize[d] risk of wrongly operat[ed] equipment" and "a higher degree of safety").

Second, iFIT points to portions of the '771 Patent's "Summary of the Invention" that discuss four "aspects" of the invention. *See* RB at 20–22. But iFIT's reliance on these high-level summaries ignores the detailed description of the invention provided later in the specification. *See* Appx045-49(4:22-11:12). Although iFIT asserts that the specification describes the invention's components as

"conventional" or references them "generically," RB at 22, this is unsupported and incorrect, and is not the test for § 101. For example, the specification describes the "motor" as including a "drive shaft" coupled by a belt to a pair of driven pulleys mounted on a pair of driven shafts that are enclosed within the stand below the dumbbell tray and that include an upper end forming a rotatable driver that sticks through an opening in the support tray. Appx046(6:31-44). The specification further describes the process by which the rotation of this specially configured motor "is simultaneously transmitted through the belt and pulley to drive both cams . . . of both dumbbells 4, namely through the pair of rotatable drivers." Appx046(6:45-53). And this specific arrangement is claimed. *See* Appx050(13:13-34). Moreover, the law is clear that a system of conventional parts, arranged in a novel, nonobvious way is patent eligible. *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Furthermore, iFIT admits that one of the summarized "aspects" includes components that "allow[] remote and substantially simultaneous adjustment of the weight on the pair of selectorized dumbbells." RB at 21 (discussing Appx044(2:65-67), Appx045(3:1-9)). The discussion of these advantages in the "Summary of the Invention" section emphasizes the importance of these technical benefits to the invention.

iFIT selectively quotes *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed Cir. 2019), but that case differs factually. There, the Court observed that the specification described the invention as "the idea of *networked-controlled* charging stations" and did not "suggest[] that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could." *Id.* at 768; *see also EcoServices*, 930 F. App'x at 645 (distinguishing *ChargePoint* as concerning "a pre-existing system being used to which only a known feature, similar to features previously determined to be abstract, was added").

Here, however, the specification shows that the claimed selectorized dumbbell systems themselves are improved and operate differently than prior art dumbbells. The claimed systems (1) provide remote and simultaneous weight adjustment, which earlier selectorized dumbbells did not provide; (2) dispatch with prior art devices' use of external tether cords that could catch on obstacles and dislodge the selector; and (3) improve safety and ease of use, benefits that *EcoServices* described as "technical improvement[s]." 830 F. App'x at 643. These technical benefits to the selectorized dumbbell system confirm patent eligibility. *See CardioNet*, 955 F.3d at 1369 (benefits described in specification confirmed claims were not directed to abstract idea).

### E. iFIT's Attempts to Excuse the District Court's Errors Lack Merit

PowerBlock's opening brief explained that the district court's Step One analysis suffers from four separate errors, in addition to misapplying precedent: (1) relying on the breadth of the Claims at Issue instead of determining their focus; (2) oversimplifying the claims by characterizing them at an unduly high level of generality and effectively writing out claim language; (3) improperly treating claim 20 as representative of claims 1–18; and (4) ignoring the invention's technical benefits described in the specification. *See* AOB at 39–52. iFIT's attempts to justify these errors fail.

#### 1. iFIT neither disputes that "broad" differs from "abstract" nor contends that the '771 Patent claims a "fundamental practice"

A broad claim need not be abstract. *See* AOB at 39–40 (discussing *McRO*, 837 F.3d at 1309, 1313–14; *Ioengine, LLC v. Paypal Holdings, Inc.*, 607 F. Supp. 3d 464, 484 (D. Del. 2022) (Bryson, J., sitting by designation)). iFIT does not dispute this. RB at 40–41. iFIT nevertheless asserts that the "price" of the '771 Patent claims' breadth is that they are directed to an abstract idea, *id.*, but this equates breadth with abstraction, doubling down on the district court's error.

iFIT cites cases discussing the breadth of the claims, but iFIT omits that those discussions centered on whether the claims preempted a "fundamental practice." In *ChargePoint*, the Court reasoned that the claim's breadth "further indicates that [it]

is directed to the abstract idea of communication over a network for device interaction," 920 F.3d at 769, which "has been and continues to be a building block of the modern economy." *Id.* at 773 (cleaned up). In *Intellectual Ventures I LLC v. Capital One Bank (USA)*, the Court used the claims' breadth "to determine whether the[y] . . . extend to cover a fundamental practice long prevalent in our system" and concluded that they covered two such practices. 792 F.3d 1363, 1369 (Fed. Cir. 2015) (cleaned up). And in *Yu*, the claims covered an abstract idea "known by photographers for over a century," while the specification acknowledged that unclaimed embodiments were "the asserted advance over the prior art." 1 F.4th at 1043, 1044.

iFIT's cases are inapposite. Unlike those cases, the '771 Patent does not improperly claim a "fundamental practice." Instead, the '771 Patent claims specific adjustable weight dumbbell systems that motorize the addition and removal of weight plates to each end of the dumbbells' handles via tangible components such as electric motors, movable weight selectors, belts and pulleys, rotatable drivers, and gripping fingers. PowerBlock is entitled to claim the full breadth of its invention; a broad claim is not abstract. The claims' specific limitations ensure they do not cover all aspects of a "fundamental practice." *See* AOB at 40–42. iFIT does not argue otherwise. RB at 40–41. Its attempt to excuse the district court's first error fails.

### 2. iFIT's attempt to rationalize the district court's oversimplification of the claims lacks merit

The district court erred by oversimplifying the claims in two respects: (1) it repeatedly described them at an unduly high level of generality; and (2) it failed to account for the claims' specific components and requirements. *See* AOB at 43–44. iFIT does not dispute (1). *See* RB at 41–43.

Regarding (2), iFIT attempts to repackage the district court's failure to address most of the claims' specific limitations as "simply not[ing] functional claiming language," RB at 42, but patent-eligible claims can employ functional language. *See, e.g.*, *EcoServices*, 830 F. App'x at 636, 645 (rejecting argument that claim reciting "washing unit," "information detector," and "control unit" and the functions they performed was abstract). Indeed, claims are eligible if they recite a "specific means *or method*." *CardioNet*, 955 F.3d at 1368 (emphasis added; concluding that claim directed to a device that performed various functions was not abstract).

iFIT relies on *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, but there, the claim concerned a data processing method performed via general-purpose computer and was "similar to other claims found to be directed to an abstract idea." 874 F.3d 1329, 1338 (Fed. Cir. 2017). Indeed, *Two-Way Media* closely resembles *University of Florida Research Foundation, Inc. v. General Electric Co.*, 916 F.3d 1363 (Fed. Cir. 2019), on which the district court improperly relied.

PowerBlock's opening brief distinguished *University of Florida*, AOB at 47–48, and tellingly, iFIT's brief does not address it.

Further, iFIT mischaracterizes the district court's approach. The district court first ignored limitations that recite the specific ways in which the claimed structural components performed their functions (*e.g.*, the electric motor is selectively energized to adjust the dumbbell weight by coupling weight plates "to each end of the handle"; the data entry device "operatively control[s] the energization of the motor to adjust" the dumbbell's weight "in accordance with the weight selection decision input by the user"). *See* Appx011. The court then criticized the claims as describing only "general function[s]" of components, which it oversimplified as "dumbbells providing exercise weights, motors that cause coupling, and data entry devices that allow users to input weight." Appx011. Thus, the lack of specifics that the district court attributed to the claims resulted from its own incomplete analysis. iFIT's gloss on the district court's opinion does not remove this error.

#### 3. iFIT mischaracterizes the district court's representative claim analysis

The district court improperly treated claim 20 as representative of claims 1–18 without any of the bases identified by this Court as warranting representativeness. *See* AOB at 48 (quoting *Berkheimer*, 881 F.3d at 1365). iFIT does not argue that such bases exist.

Instead, iFIT asserts that "the district court 'ultimately [concluded] that claim 20 is not representative of the '771 patent,'" RB at 44, but this improperly truncates the district court's decision. The full passage contradicts iFIT's assertion:

> However, this court ultimately concludes that claim 20 is not representative of the [']771 patent *insofar as claim 19's invocation of 'means . . . for' language* entitles it to the operation of 36 [*sic*] U.S.C. § 112 ¶ 6, which is applicable *only to that claim*. Thus, in the following sections, the court first applies *Alice* Step One to claims 1–18 and claim 20 *before moving on to consider claim 19.*

Appx009-10 (emphasis added). As this shows, although the district court concluded that claim 19 required different treatment, it dealt with claims 1–18 and 20 collectively, focusing on claim 20, cursorily addressing claim 1, and rejecting claims 2–18 as abstract based on its conclusion as to claim 1. iFIT's argument mischaracterizes the district court's opinion and should be rejected.

#### 4. iFIT mischaracterizes the district court's analysis of the '771 Patent's advantages over the prior art

Finally, PowerBlock's opening brief explains that the district court failed to properly consider the claimed systems' technical advantages described in the specification. *See* AOB at 50–52. iFIT's response again mischaracterizes the district court's opinion. iFIT asserts that the court "acknowledged that patents directed to automating manual processes are patentable if the claims 'achieve a level of automation that provides an improvement over the prior art.'" RB at 46 (quoting

*EcoServices*, 830 F. App'x at 642). But the text of the district court's opinion shows that it viewed this as a mandatory requirement for patentability:

> Where patent claims are directed toward automating previously manual activities, the claims at issue *must* "achieve a level of automation that provides an improvement over the prior art."

Appx006 (emphasis added; quoting *EcoServices*, 830 F. App'x at 642). Further, the district court relied on cases concerning the use of generic computers to automate mental processes to exclude all technical improvements that "eliminat[e] human error by automating processes." Appx006 (cleaned up). But this conflicts with *EcoServices*, which identified "minimize[d] risk of wrongly operat[ed] equipment" as showing that the claimed system provided a "technical improvement" over the prior art. 830 F. App'x at 642–43.

iFIT also asserts that the district court "considered" the "technical advantages over the prior art described in the specification," but it cites a page from the court's *Step Two* analysis. RB at 46 (citing Appx017). Thus, there is no dispute that the district court failed to consider the invention's technical advantages under Step One, contravening this Court's case law. *See CardioNet*, 955 F.3d at 1371. The district court's decision must be reversed.

## III. iFIT's Step Two Argument Fails to Address the Claims "as an Ordered Combination," Mischaracterizes the District Court's Decision, and Conflicts with Precedent

### A. Like the District Court, iFIT Does Not Discuss the Claim Elements "as an Ordered Combination"

iFIT argues that the Claims at Issue lack an inventive concept, RB at 32–36, but its argument is both incomplete and incorrect. iFIT fails to address the claim elements "as an ordered combination." *Amdocs*, 841 F.3d at 1293; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) ("When the limitations of the '399 patent's asserted claims are taken together as an ordered combination, the claims recite an invention that is not merely the routine or conventional use of the Internet."). This Court has determined that claims "recite a sufficient inventive concept under step two . . . when the claims solve a technology-based problem, even with conventional, generic components, combined in an unconventional manner." *Amdocs*, 841 F.3d at 1300; *see also Bascom*, 827 F.3d at 1350 ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

iFIT asserts that the claims "recite only known and conventional components" and quotes portions of the specification that discuss some of the recited elements. RB at 32, 34–35. But iFIT never addresses the combined system. *See id.* at 32–36. iFIT's sole attempt is its assertion that "PowerBlock has not shown" that the claimed

components "as an ordered combination" perform anything but conventional activity. *Id.* at 36. But this conclusory argument does not withstand scrutiny.

Taking claim 14 as an example, iFIT posits that the following system adds nothing to the abstract idea of an "automated selectorized dumbbell" and is "conventional": a weight selection and adjustment system for a selectorized dumbbell that includes a stand having a single motor and a belt-and-pulley system mounted below the upper surface, with the belt-and-pulley system connecting the motor's rotatable drive shaft to rotatable drivers that releasably connect to the corresponding selectors of a pair of selectorized dumbbells through holes in the stand's upper surface, such that when the pair of dumbbells is placed on the stand, the belt-and-pulley system translates the motor drift shaft rotation to the selectors' rotatable drivers, thereby substantially simultaneously adjusting the dumbbells' weights to the user's desired weight. *See supra* § II.B. That iFIT contends that even this highly detailed system is "conventional" shows how extreme—and extremely wrong—its position is.

Like the district court, iFIT supports this extreme position with inapt cases. iFIT relies on several cases that involved mental tasks or data processing implemented via "generic computer . . . perform[ing] generic computer functions." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314–15 (Fed. Cir. 2016) (claims directed to categorizing email based on email identifiers using generic

computer); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015) (claims directed to "fundamental economic concept" of "offer-based price optimization" and recited only "conventional computer activities or routine data-gathering steps"); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611–12 (claims directed to classifying and storing data in a network environment). None of these cases featured physical processes performed by mechanical components.

iFIT also relies on *Chamberlain Group v. Techtronic Industries Co.*, 935 F.3d 1341 (Fed. Cir. 2019). But it too is distinguishable because the claimed advantage over the prior art was wirelessly communicating status information, which resembled abstract ideas identified in previous cases. *See id.* at 1346, 1349 (explaining that "[w]ireless communication cannot be an inventive concept . . . because it is the abstract idea that the claims are directed to"). Here, the claims recite inventive concepts that differ from the alleged abstract idea of automated weight adjustment, including the use of specially configured sensors and specific gripping devices to hold a dumbbell in place during weight adjustment and the simultaneous weight adjustment system recited in claims 12–14.

Finally, iFIT attempts to downplay the technical advantages discussed in the specification as "originat[ing] exclusively through the removal of human operators." RB at 33. Not only does this argument conflict with *EcoServices*, it is incorrect. For

example, the specification explains that in the embodiment of claims 15–18 in which all weight adjustment components are mounted on the handle, "the weight on each selectorized dumbbell is set separately and not simultaneously." Appx048(10:63-64). This shows that particular claimed systems provide particular technical improvements that do not necessarily flow from automation.

### B. In Attempting to Defend the District Court's Improper Factual Findings, iFIT Mischaracterizes the Court's Decision and Contravenes Case Law

iFIT disputes that the district court made inappropriate factual findings at the pleading stage, but it again mischaracterizes the court's opinion and the intrinsic evidence. The district court failed to cite any portion of the pleadings as supporting its Step Two findings that the recited claim elements are generic, routine, and conventional. *Berkheimer*, 881 F.3d at 1368 ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.").

iFIT says otherwise, but it points only to (1) the district court's citation to a single page of PowerBlock's brief, and (2) a portion of the district court's representativeness analysis. *See* RB at 38 (citing Appx009, Appx017). Neither of these passages addressed whether the claim elements are generic, routine, or well-

understood and thus do not reflect any support in the pleadings for the district court's findings. By contrast, the district court expressly relied on iFIT's brief as its sole support for rejecting claim elements as "well-known":

> *As Defendant notes*, the [']771 patent itself acknowledges that both selectorized dumbbells generally and data-entry devices such as the one at issue in claim 20 were well-known at the time of the [']771 patent's issuance. *Motion at 3–5.*

Appx017 (emphasis added).

iFIT also disputes that the specification's statement that data entry devices had not previously been used with selectorized dumbbells evidences that component's nonconventional nature in the relevant field of technology. RB at 39–40. But iFIT's argument is inconsistent with case law providing that claims may supply an inventive concept through a "non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. In *Cellspin Soft, Inc. v. Fitbit, Inc.*, the Court rejected the appellees' argument that claims failed to recite an inventive concept because they "simply 'replace a USB or similar cable with Bluetooth.'" 927 F.3d 1306, 1318 (Fed. Cir. 2019). The Court explained that "even assuming that Bluetooth was conventional at the time of these inventions, implementing a well-known technique with particular devices in a specific combination . . . can be inventive." *Id.*

Here, the specification states that data entry devices had not previously "been used to adjust the numbers of weights coupled to each end of the handle of a

selectorized dumbbell." Appx044(2:4-8). The district court was obliged to take that statement as true. Its failure to do so warrants reversal. *See CardioNet*, 955 F.3d at 1370–71 (district court failed to construe all facts in favor of patentee by ignoring statements in patent's specification).

## IV. CONCLUSION

For the foregoing reasons, iFIT's argument should be rejected, and the district court's order dismissing the Claims at Issue as ineligible should be reversed.

Dated: May 13, 2024

Respectfully Submitted,

By: /s/Thomas J. Leach

Thomas J. Leach
Michael A. Erbele
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
(612) 332-5300

Joshua A. Hartman
MERCHANT & GOULD P.C.
1900 Duke Street, Suite 600
Alexandria, VA 22314
(703) 684-2500

*Attorneys for Plaintiff-Appellant*
*PowerBlock Holdings, Inc.*

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FEDERAL CIRCUIT RULE 32(b)**

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   - this brief contains 6,725 words, excluding parts of the brief exempted by Fed. Cir. R. 32(b)(2).

2. This brief complies with the typeface requirements of the Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   - this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 14-point Times New Roman font.

Dated: May 13, 2024

By: s/*Thomas J. Leach*
Thomas J. Leach

*Attorneys for Plaintiff-Appellant*
*PowerBlock Holdings, Inc.*