# United States Court of Appeals for the Federal Circuit

---

**POWERBLOCK HOLDINGS, INC.,**
*Plaintiff-Appellant*

**v.**

**IFIT, INC.,**
*Defendant-Appellee*

---

2024-1177

---

Appeal from the United States District Court for the District of Utah in No. 1:22-cv-00132-JNP-CMR, Judge Jill N. Parrish.

---

Decided: August 11, 2025

---

JOSHUA ALAN HARTMAN, Merchant & Gould, PC, Alexandria, VA, argued for plaintiff-appellant. Also represented by MICHAEL A. ERBELE, THOMAS J. LEACH, III, Minneapolis, MN.

MARK W. FORD, Maschoff Brennan P.L.L.C., Park City, UT, argued for defendant-appellee. Also represented by C.J. VEVERKA; LANNIE REX SEARS, Salt Lake City, UT.

---

Before TARANTO and STOLL, *Circuit Judges*, and SCARSI, *District Judge*.[1]

STOLL, *Circuit Judge*.

PowerBlock Holdings, Inc. appeals the district court's decision to partially dismiss its complaint after concluding that almost all claims of the asserted patent are ineligible under 35 U.S.C. § 101. Because we conclude that the relevant claims of the asserted patent are not directed to an abstract idea, we reverse and remand for further proceedings.

## BACKGROUND

PowerBlock Holdings, Inc. ("PowerBlock") filed suit in the U.S. District Court for the District of Utah, alleging that iFit, Inc. ("iFit") infringed PowerBlock's U.S. Patent No. 7,578,771 and violated Utah's Unfair Competition Act. The '771 patent "relates generally to exercise equipment" and, more particularly, "to selectorized dumbbells and to an overall, integrated system for selecting and adjusting the weight of a selectorized dumbbell or a pair of selectorized dumbbells." U.S. Patent No. 7,578,771 col. 1 ll. 15–19. The specification's background section describes the drawbacks of prior selectorized dumbbells and the problem to be solved by the claimed invention:

> While selectorized dumbbells represent a major advance in exercise equipment, the selectors used to adjust the weight of the dumbbell are mechanical members that must be directly gripped and manipulated by the user. . . .
>
> With mechanical and user positionable selectors, there is always the possibility that the user might

[1] Honorable Mark C. Scarsi, District Judge, United States District Court for the Central District of California, sitting by designation.

> not fully or correctly engage the selector. If this were to occur, one or more weights might inadvertently detach from the handle while the dumbbell is in use. This poses a risk of injury to the user or a risk of damage to the dumbbell. Obviously, this is a disadvantage.
>
> . . . The weight of each dumbbell must be individually set or adjusted. . . . The user must take care to see that the selectors on the two dumbbells are identically positioned to provide the same weight on each dumbbell. . . .
>
> . . . There is a need in the art to automate and ease the task of adjusting the weight of selectorized dumbbells.

*Id.* col. 1 l. 38–col. 2 l. 10.

Independent claims 1 and 20 are relevant on appeal and reproduced below.

> 1. A weight selection and adjustment system for a selectorized dumbbell, which comprises:
>
> (a) a selectorized dumbbell, which comprises:
>
> (i) a stack of nested left weight plates and a stack of nested right weight plates;
>
> (ii) a handle having a left end and a right end; and
>
> (iii) a movable selector having a plurality of different adjustment positions in which the selector may be disposed, wherein the selector is configured to couple selected numbers of left weight plates to the left end of the handle and selected numbers of right weight plates to the right end of the handle with the selected numbers of coupled weight plates differing depending upon the adjustment position in which the

selector is disposed, thereby allowing a user to select for use a desired exercise weight to be provided by the selectorized dumbbell; and

(b) an electric motor that is operatively connected to the selector at least whenever a weight adjustment operation takes place, wherein the electric motor when energized from a source of electric power physically moves the selector into the adjustment position corresponding to the desired exercise weight that was selected for use by the user.

20. A weight selection and adjustment system for a dumbbell, which comprises:

(a) a dumbbell that provides an exercise weight that is lifted by a user when the user grips and lifts a handle of the dumbbell, wherein the exercise weight provided by the dumbbell is adjustable by coupling more or fewer weight plates to each end of the handle;

(b) an electric motor that may be selectively energized and when energized will cause a desired number of weight plates to be coupled to each end of the handle; and

(c) a data entry device to allow the user to input a weight selection decision that operatively controls the energization of the motor to adjust the exercise weight of the dumbbell in accordance with the weight selection decision input into the data entry device by the user.

*Id.* col. 11 l. 54–col. 12 l. 10, col. 14 ll. 33–47.

Invoking 35 U.S.C. § 101, iFit filed a Rule 12(b)(6) motion to dismiss for failure to state a claim, which the district court denied in part and granted in part. *PowerBlock Holdings, Inc. v. iFit, Inc.*, No. 22-132, 2023 WL 6377781

(D. Utah Sept. 29, 2023); FED. R. CIV. P. 12(b)(6). Applying the Supreme Court's two-step framework for determining patent eligibility, the district court determined that all but one claim of the '771 patent are ineligible under § 101.

At the first step, the district court held that claims 1–18 and 20 of the '771 patent are "directed to an abstract idea and implemented using generic components requiring performance of the same basic process." *PowerBlock*, 2023 WL 6377781, at *7 ("[T]he language of claims 1–18 and claim 20, read in light of the patent as a whole, is defined by the general outcome or effect of automated selectorized dumbbell weight stacking . . . ."). At the second step, the district court concluded that, because claims 1–18 and claim 20 "do not add significantly more than the abstract idea of the end-result of an automated selectorized dumbbell," the claims fail the two-step test and are ineligible. *Id.* at *9. Accordingly, the district court granted iFit's motion to dismiss as to claims 1–18 and 20.

Claim 19, on the other hand, "claims 'means selectively actuable by the user for adjusting the exercise weight of each dumbbell without requiring the user to physically contact and move the selector himself or herself.'" *Id.* at *8 (quoting '771 patent col. 14 ll. 29–32). The district court described "the function claimed [in claim 19 as] dumbbell weight-adjustment not requiring physical contact by the user," and noted that "the structures described in the patent specification might include, for example, 'selector 35' and the 'front and back pin arrays 36f and 36b,' and other components." *Id.* (quoting '771 patent col. 6 ll. 31–56). Claim 19, the district court thus explained, "may not be subject to the abstraction that ails independent claims 1 and 20 and, as a result, dependent claims 2–18." *Id.* The district court denied the motion to dismiss as to claim 19

because "the parties failed to meaningfully argue this issue." *Id.*[2]

PowerBlock appeals the district court's judgment as to claims 1–18 and 20. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I

"We review a district court's dismissal for failure to state a claim under the regional circuit's law. The Tenth Circuit reviews such dismissals de novo, 'accept[ing] all well-pled factual allegations as true and view[ing] these allegations in the light most favorable to the nonmoving party.'" *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1358 (Fed. Cir. 2020) (alterations in original) (citations omitted). We also "review de novo a determination that a claim is directed to patent-ineligible subject matter." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020).

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ." 35 U.S.C. § 101. "The Supreme Court has identified three types of subject matter that are not patent-eligible: 'Laws of nature, natural phenomena, and abstract ideas are not patentable.'" *CardioNet*, 955 F.3d at 1367 (quoting *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)). "[T]he concern that drives this exclusionary principle [i]s one of pre-emption." *Alice*, 573 U.S.

---

[2] Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), the parties agreed to dismiss without prejudice PowerBlock's claim for infringement of claim 19 and its related claim under Utah's Unfair Competition Act. J.A. 281–83.

at 216. "The abstract ideas category, the subject matter at issue in this case, embodies the longstanding rule that an idea of itself is not patentable." *CardioNet*, 955 F.3d at 1367 (cleaned up) (quoting *Alice*, 573 U.S. at 218). But "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice*, 573 U.S. at 217. Applications of abstract concepts to a new and useful end are eligible for patent protection. *Id.*

The Supreme Court has "articulated a two-step test for examining patent eligibility." *CardioNet*, 955 F.3d at 1367. "At step one, we consider the claims 'in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.' We also consider the patent's written description, as it informs our understanding of the claims." *Id.* at 1367–68 (citations omitted). "If the claims are not directed to a patent-ineligible concept under *Alice* step [one], 'the claims satisfy § 101 and we need not proceed to the second step.'" *Id.* at 1368 (quoting *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018)). "If the claims are directed to a patent-ineligible concept, however, we next consider *Alice* step two. In this step, we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (citations and internal quotation marks omitted).

## II

We begin by analyzing claim 1 of the '771 patent at *Alice* step one. At this step, "we look to whether the claims 'focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" *Id.* (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). We hold that claim 1 is not directed to an abstract idea.

The crux of the district court's erroneous step one analysis is its incorrect determination that claim 1 is directed to the abstract idea of automated weight stacking, "giv[ing] rise to a preemption problem." *PowerBlock*, 2023 WL 6377781, at *7. The district court concluded that claim 1 is "directed towards the general end of automated weight stacking" because it "seek[s] to claim systems comprising weight selection and adjustment systems consisting of the two or three 'generic' components, rather than any particular system or method of selectorized weight stacking." *Id.* at *6 (citation omitted). We reach a different conclusion. Although claim 1 is broad, we do not agree that it provides no meaningful limitations on how to accomplish automated weight stacking such that it would "preempt any weight-selection and adjustment system." *Id.* at *7.

Claim 1 is limited to a particular type of dumbbell: a selectorized dumbbell with a stack of nested left weight plates, a stack of nested right weight plates, a handle, and a movable selector with different adjustment positions, where moving the selector to different adjustment positions changes the number of left and right weight plates coupled to the dumbbell. In addition, the claim recites that an electric motor is "operatively connected to the selector" and physically moves the selector into the different adjustment positions corresponding to the desired weight selected by a user. '771 patent col. 12 ll. 4–5. Claim 1 is thus "limited to a specific implementation of a technological improvement to" selectorized dumbbells. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019). We hold that the limitations in this claim provide enough specificity and structure to satisfy § 101.

iFit argues that "the claimed invention is defined only in terms of its functions and the desired result . . . without specifying *how* the system actually improves the technology of selectorized dumbbells." Appellee's Br. 19–20. But, as just described, claim 1 does so specify—it requires an electric motor, coupled to a selector movable into different

adjustment positions, and energizing the motor to physically move the selector via the coupling between the motor and the selector. In the context of this rather simple mechanical invention, we conclude that claim 1 goes beyond claiming the "broad concept" of automating a known technique and provides a sufficiently "specific manner of performing" automated weight stacking. *See Chamberlain*, 935 F.3d at 1347–48; *cf. Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) ("[W]hen a claim directed to an abstract idea contains *no restriction* on how the result is accomplished and the mechanism is not described, . . . then the claim is not patent-eligible." (cleaned up) (emphasis added)).

We disagree with the district court's reasoning that the '771 patent is analogous to the patent at issue in *University of Florida Research Foundation, Inc. v. General Electric Co.*, 916 F.3d 1363 (Fed. Cir. 2019). *PowerBlock*, 2023 WL 6377781, at *6. The patent at issue there, involving "a method and system for 'integrat[ing] physiologic data from at least one bedside machine,'" sought to "automate 'pen and paper methodologies' to conserve human resources and minimize errors" and was "a quintessential 'do it on a computer' patent." *Univ. of Fla.*, 916 F.3d at 1366–67 (alteration in original) (citations omitted). Claim 1 of the '771 patent is different. It is directed to an eligible mechanical invention—an improved "machine," i.e., "a concrete thing, consisting of parts, or of certain devices and combination of devices." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010); *see* 35 U.S.C. § 101.

Claim 1 at issue here is also unlike the claims at issue in *Chamberlain*, relied on by iFit at oral argument. Oral Arg. at 22:16–23:13, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=24-1177_05072025.mp3. In *Chamberlain*, the specification described a system for wirelessly controlling a moveable barrier, such as a garage door. The claims recited a moveable barrier operator with a controller, an interface, and a wireless transmitter that sends

status information. The claims did not recite the moveable barrier. We concluded that the asserted claims were "directed to wirelessly communicating status information about a system." *Chamberlain*, 935 F.3d at 1346–47 ("[T]he broad concept of communicating information wirelessly, without more, is an abstract idea."). We explained that the claims in *Chamberlain* were "not limited to a specific implementation of a technological improvement to communication systems," instead, "they simply recite[d] a system that wirelessly communicates status information" instead of using physical signal paths. *Id.* at 1347 ("[W]ireless communication . . . was already a basic, conventional form of communication."). Claim 1 of the '771 patent here is distinguishable. Claim 1 recites elements of a mechanical device including an electric motor that physically moves a selector that is both connected to the motor and configured to couple selected numbers of left weight plates to the left end of a dumbbell handle and selected numbers of right weight plates to the right end of the dumbbell handle to automatically adjust dumbbell weight. Here, claim 1 passes muster at *Alice* step one, as it is sufficiently focused on a specific mechanical improvement to selectorized dumbbell weight stacking.

iFit urges us to ignore the claim limitations involving conventional selectorized dumbbell components when assessing whether claim 1 is directed to a specific structure or an abstract idea, arguing that "[r]epeating elements of prior art selectorized dumbbells does not imbue claim 1 with any specific means or method." Appellee's Br. 27; *see also* Oral Arg. at 16:19–16:33 (iFit's counsel arguing that "the structure that is identified and recited in claim 1 is nothing more than conventional components that have existed" in the selectorized dumbbell prior art). But the *Alice* step one inquiry involves consideration of the claims "*in their entirety* to ascertain whether their character *as a whole* is directed to excluded subject matter." *CardioNet*, 955 F.3d at 1367 (emphases added) (quoting *McRO*,

837 F.3d at 1312). Indeed, we have "cautioned that courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO*, 837 F.3d at 1313 (quoting *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)); *see Alice*, 573 U.S. at 217 ("At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" (omission in original) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012))). We decline iFit's invitation to read out or ignore limitations in claim 1 here merely because they can be found in the prior art. *See Diamond v. Diehr*, 450 U.S. 175, 188 (1981) ("[I]t [is] inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the [§ 101] analysis.").[3] Considering claim 1 in its entirety, we conclude that it is directed to a sufficiently specific mechanical invention that, as a whole, advantageously automates selectorized dumbbell weight stacking. *See* '771 patent col. 1 ll. 38–67, col. 11 ll. 5–37. Because we conclude under *Alice* step one that claim 1 of the '771 patent is not directed to an abstract idea, we do not reach

---

[3] We caution parties and tribunals not to conflate the separate novelty and obviousness inquiries under 35 U.S.C. §§ 102 and 103, respectively, with the step one inquiry under § 101. *See Parker v. Flook*, 437 U.S. 584, 593 (1978) ("The obligation to determine what type of discovery is sought to be patented must precede the determination of whether that discovery is, in fact, new or obvious."); *see also Mayo*, 566 U.S. at 90 ("[T]o shift the [§ 101] patent-eligibility inquiry entirely to . . . later sections [like § 102] risks creating significantly greater legal uncertainty, while assuming that those sections can do work that they are not equipped to do.").

*Alice* step two. Claim 1 is patent eligible under § 101. *See CardioNet*, 955 F.3d at 1371.

We reach the same conclusion for claims 2–18 and 20 because, "[f]or purposes of validity, the parties did not argue the[se] claims separately, so they rise or fall together." *Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1134 n.9 (Fed. Cir. 2018); *see also Endo Pharms. Inc. v. Teva Pharms. USA, Inc.*, 919 F.3d 1347, 1353 n.3 (Fed. Cir. 2019).

## CONCLUSION

For the foregoing reasons, we reverse the district court's determination that claims 1–18 and 20 of the '771 patent recite patent-ineligible subject matter and remand for further proceedings.

**REVERSED AND REMANDED**

## COSTS

Costs to Appellant.